Mona Bell AZURE, a/k/a Helen Marie Bell Azure, et al., Plaintiffs-Appellees,

v.

Rogers C. B. MORTON, Secretary of the Interior, et al., Defendants-Appellants.

No. 74–2211.

United States Court of Appeals, Ninth Circuit.

April 15, 1975.

Rehearing Denied May 14, 1975.

898

Glen R. Goodsell, Atty., Dept. of Justice, Washington, D. C. (argued), for defendants-appellants.

Donald C. Robinson, Butte, Mont., and Don H. Marmaduke (argued), Portland, Or., for plaintiffs-appellees.

## OPINION

Before WRIGHT and CHOY, Circuit Judges, and EAST,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

This appeal involves claims of a group of Indians of the Fort Belknap Indian Community of Montana to participate in the distribution of funds appropriated by Congress in payment of a judgment by the Indian Claims Commission. The district court granted summary judgment for the plaintiffs, thereby reversing a contrary determination by the Secretary of the Interior. We affirm in part and reverse in part.

The plaintiffs, hereinafter referred to as the Azure Group, were duly enrolled members of the Gros Ventre Tribe of the

* Senior District Judge of the District of Oregon.

Fort Belknap Indian Community. Their names had appeared on the 1937 judgment roll of the Tribe. After a judgment by the Indian Claims Commission in 1968 in favor of that tribe, Congress undertook by Public Law 92–254 to prescribe the terms of distribution. Section 2 of the Act of Congress of March 18, 1972 provides:

> . . . The sum of $2,100,000 from the funds credited to the Gros Ventre Tribe under section 1 of this Act shall be distributed per capita to all members of the Fort Belknap Community who were born on or prior to and are living on the date of this Act and (a) whose names appear on the February 5, 1937, payment roll of the Gros Ventre Tribe of the Fort Belknap Reservation, or (b) who are descended from a person whose name appears on said roll, *if such member possesses a greater degree of Gros Ventre blood than Assiniboine blood.*

86 Stat. 64. (Emphasis added.)

The Secretary of the Interior denied the claims of the Azure Group on the ground that they did not come within the purview of Section 2. In reversing, the district court ordered the Secretary to distribute $976 to each of the 29 plaintiffs who were duly enrolled in the Gros Ventre Tribe and participated in its 1937 judgment payment.

Two distinct Indian tribes, the Gros Ventre and the Assiniboine, live on the reservation in north central Montana. The two live separately and have long maintained separate cultural identities and languages. Since the 1934 Indian Reorganization Act [48 Stat. 984], the two tribes have been recognized officially and referred to by the government as the Fort Belknap Indian Community, a federally chartered corporation internally governed by a 12-member community· council, six from each tribe. Through its council members, each tribe retains exclusive jurisdiction over its own tribal properties and claims.

With their divided interests and identities, the two tribes have long maintained separate enrollments for their members, this separation being provided for specifically in the original community charter. The purpose was stated to be to facilitate the individual establishment of claims against the federal government in matters pertaining to reparation awards and allotment claims.

Three such claims have been made by the Gros Ventre Tribe. Each resulted in payment by the government, first in 1921 under the Allotment Act, next in 1937 pursuant to the first "Sweet Grass Hills" claim, and finally in 1972 under the second "Sweet Grass Hills" claim. It is this last claim that gave rise to this appeal, with the Azure Group seeking 29 shares totalling $28,304.

The Secretary's interpretation of Section 2 of the Act precluded the plaintiffs from participating. He would construe the language to mean that an Indian may share in the payment if he is a member of the Community and is either (a) named on the 1937 payment roll, or (b) a descendant of one named on that roll, provided that under either alternative the claimant has more Gros Ventre blood than Assiniboine blood. In other words, says the Secretary, Congress meant the blood restriction clause (which we have emphasized in the quoted portion of the Act, above) modified both alternative conditions. The plaintiffs of the Azure Group have more Assiniboine than Gros Ventre blood and, by the Secretary's interpretation, are barred from participation.

The Secretary contends that Congress intended to exclude the Azure Group even though all of its members have maintained their separate tribal identity as Gros Ventres and are duly enrolled members of the Tribe (a necessary requirement for which is at least one quarter degree Gros Ventre blood). In support of this dual-modification interpretation, the Secretary postulates that the use of the word "members" early in the sentence in reference to the Fort Belknap Community, coupled with its later appearance in the blood quantum proviso, could only mean that Congress designed the restriction to apply to both

subsections (a) and (b). He argues that if Congress had intended the restriction to apply only to subsection (b), it would have used the word "person" rather than "member" to limit the restriction accordingly.

Settled rules governing statutory construction compel us to reject this leapfrog interpretation. As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately. *See, e. g.,* Quindlen v. Prudential Insurance Company of America, 482 F.2d 876 (5th Cir. 1973); In re Rice, 83 U.S.App.D.C. 26, 165 F.2d 617 (1947); 82 C.J.S. Statutes § 335 (1953). Here the disjunctive form "or" sets off subsection (a) from (b) and fashions two categories of eligibility. Next, under the "doctrine of the last antecedent," qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote. *See, e. g., Quindlen, supra;* Mandel Bros. v. FTC, 254 F.2d 18 (7th Cir. 1958), rev'd on other grounds, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959); United States ex rel. Santarelli v. Hughes, 116 F.2d 613 (3d Cir. 1940); 82 C.J.S. Statutes § 335 (1953). We see no reason to deviate from these common guidelines and the interpretation of Section 2 that they command. Accordingly, we agree with the district court in that the subsection (b) blood restriction does not apply to subsection (a) recipients.

There is little legislative history to aid in the interpretation of Section 2. However, considering what scant history is available, all that is evident to this court is that Congress was absolutely intent on preventing double recovery in tribal awards of a mixed blood Gros Ventre-Assiniboine Indian, H.R.Rep.No. 92–893, 92nd Cong., 2d Sess. (1972). Our construction of the statute in no way disturbs this congressional purpose. No members of the Azure Group have in any way maintained a tribal identity with the Assiniboine Indians. None have asserted a claim of right to partici-

pate in a 1972 Assiniboine judgment fund awarded that Tribe. Furthermore, our decision here will specifically preclude the Azure Group from participating in the Assiniboine award under the terms of its distribution Act.

That the question presented by this appeal affects only a small segment of a field of approximately 2,000 who may eventually participate in the Gros Ventre judgment indicates that congressional concern over dual participation was logically directed at the more populous and younger members comprising the subsection (b) group. Because of the intermarriage and blood mixture characteristic to many in this group, Congress provided a stiffer standard before recipients in this category could recover as Gros Ventre Indians.

Congress never intended to exclude the Azure Group from participating in the distribution of the Gros Ventre judgment fund. We affirm the district court order in this regard.

Inasmuch as the district court was faced only with determining the rights of the Azure Group plaintiffs, we reverse that part of the order which addressed and collaterally determined the ineligibility of another 178 Indians, the Adams Group, to participate in the Gros Ventre judgment. Although they are members of the Fort Belknap Community, they do not possess the one-quarter degree Gros Ventre blood quantum requisite to participating membership in the Tribe. Because of this deficiency, the district court precluded their participation in the Gros Ventre award.

We express no opinion on the merits of this unexpressed eligibility requirement appended by the district court to the language of the distribution statute. We conclude only that it was unnecessary to meet the issue in determining the rights of the Azure Group. All in the Azure Group were members of the Fort Belknap Community. All were listed on the 1937 Gros Ventre payment roll as required by subsection (a). Having determined that the Azure Group is qualified to share in the Gros Ventre

judgment, it would be improper for us to rule on a requirement not at issue here involving a group of plaintiffs who are not parties to this suit. Their eligibility to participate in the Gros Ventre judgment is being asserted in a separate action. The propriety of implying in the distribution statute a tribal blood quantum/membership requirement can be more properly presented in that proceeding.

Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.