**UNITED STATES of America, Plaintiff,**

v.

**METATE ASBESTOS CORPORATION, et al., Defendants.**

No. CIV–83–309–GLO–RMB.

United States District Court,
D. Arizona,
Tucson Division.

April 10, 1984.

---

Kevin A. Gaynor, Environmental Enforcement Section, Land & Natural Resources Division, Dept. of Justice, Washington, D.C., for plaintiff.

Leonard N. Sowers, Kearny, Ariz., William H. Sandweg, Jill H. Grossman, Robbins & Green, Phoenix, Ariz., for defendants.

## ORDER

BILBY, District Judge.

This is an action for injunctive relief and cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, and the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* Plaintiff United States and defendants Jack and Geraldine Neal, Jacqueline F. Querns, D.W. Jaquays Mining and Contractors Equipment Co., and Jaquays Mining Corp. have filed cross-motions for partial summary judgment on certain issues underlying the CERCLA claims.

The United States has alleged that defendants are liable under CERCLA for the costs of cleaning up asbestos mine and mill wastes alleged to be present at the Mountain View Mobile Home Estates in Globe, Arizona. Defendant Metate Asbestos Corp., against which default was entered on December 2, 1983, formerly operated an asbestos mill on 10 acres of the site. Defendant Neal, Capper, Neal Land Development Corp., against which default also was entered, owned the other five acres of the subdivision. The two corporations, both of which are now defunct, developed the Mountain View subdivision and sold lots to the public there beginning in 1973. Defendants Jack and Geraldine Neal were stockholders in both corporations, and defendant Jacqueline Querns (formerly Jacqueline Capper) was a stockholder in Neal, Capper, Neal. Jaquays Mining operated an asbestos mill on property adjacent to Mountain View, and asbestos tailings are disposed of at that mill site.

CERCLA generally provides that persons defined as operators of hazardous waste facilities are liable for costs of removal or remedial action incurred by the United States in cleaning up those substances. *See* 42 U.S.C. § 9607(a). The government has moved for partial summary judgment that three elements of its claim under CERCLA have been established: that there was (1) a release or threatened release of (2) a hazardous substance at (3) a facility, the Mountain View Mobile Home Estates. *See* 42 U.S.C. § 9607(a). Defendants have filed a cross-motion for partial summary judgment that they are not liable under CERCLA as a matter of law because asbestos mine and mill wastes do not come with-

in CERCLA's definition of "hazardous substance."

### ASBESTOS TAILINGS AS A "HAZARDOUS SUBSTANCE"

■ The question of whether asbestos mine and mill wastes are regulated by CERCLA is one of first impression, which can be determined by analyzing the statutory definition of "hazardous substance" and reviewing the interpretations suggested by the government and by the defendants. The pertinent section of CERCLA is 42 U.S.C. § 9601(14), which defines "hazardous substance" as follows:

(14) "hazardous substance" means (A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas);

Under the scheme set up by section 9601(14), a substance may be considered a "hazardous substance" if it falls within any one of six categories. Each category includes substances that are already regulated under another environmental act. Because asbestos is regulated under both 33 U.S.C. § 1317(a) (the Federal Water Pollution Control Act) and section 112 of the Clean Air Act, it is a hazardous substance under CERCLA. 42 U.S.C. § 9601(14)(D) and (E); 40 C.F.R. § 401.15 and 40 C.F.R. Part 61.

■ Defendants argue that, although asbestos is regulated under subsections (D) and (E) of section 9601(14), asbestos mine and mill wastes are exempt from CERCLA regulation by virtue of subsection (C). Subsection (C) provides for CERCLA regulation of substances listed under the Solid Waste Disposal Act "but not including any waste the regulation of which under the Solid Waste Disposal Act has been suspended by Act of Congress." Since the regulation of solid waste from the extraction and processing of ores and minerals has been suspended by Congress (pending a study by the Environmental Protection Agency), asbestos tailings clearly are excluded from subsection (C). *See* 42 U.S.C. § 6921(b)(3)(A). The question is whether that exclusion also operates as a complete exemption from CERCLA regulation for mine and mill wastes, including asbestos tailings. The defendants argue that it does. The government, on the other hand, argues that mine or mill wastes that also fall within any of the other five categories in section 9601(14)—as asbestos tailings do—are still regulated by CERCLA.

■ The Court finds that the government's interpretation of section 9601(14) is correct. When interpreting a statute, a court must begin with the plain language of the statute. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). Unless there is a clearly expressed legislative intention to the contrary, the language ordinarily must be regarded as conclusive. *Id.; Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The plain language of section 9601(14) shows a clear intent to exempt mine and

mill wastes only from subsection (C) and not from coverage from CERCLA by virtue of the other subsections.

■ One canon of statutory construction, the "doctrine of the last antecedent," bolsters this conclusion. That doctrine states that qualifying words, phrases and clauses must be applied to the words or phrase immediately preceding them and are not to be construed as extending to and including others more remote. *First Charter Financial Corp. v. United States,* 669 F.2d 1342, 1350 (9th Cir.1982); *Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975). The *Azure* case is particularly instructive. There, the court applied the doctrine to a statute providing that a sum of money would be paid to:

> all members of the Fort Belknap Community who were born on or prior to and are living on the date of this Act and (a) whose names appear on the February 5, 1937, payment roll of the Gros Ventre Tribe ..., or (b) who are descended from a person whose name appears on said roll, if such member possesses a greater degree of Gros Ventre blood than Assiniboine blood.

*Id.* The government had interpreted the statute to mean that both subsections (a) and (b) were limited by the last clause requiring a greater degree of Gros Ventre blood. The Ninth Circuit, however, held that the blood restriction was part of subsection (b) and did not apply to subsection (a) recipients.

■ In the instant case, the argument is even stronger that the limiting words should be restricted to the subsection in which they are found. The limitation is wholly within subsection (C), which is in the middle of a list of similar subsections, rather than at the end as in *Azure.* Therefore, it is less likely that the limitation within (C) was intended to apply to all the other subsections.

In addition, there is a general exclusion from CERCLA's "hazardous substance" definition for petroleum and natural gas, which is clearly stated in a separate sentence at the end of section 9601(14). If Congress had intended the exclusion in subsection (C) to apply as a complete exemption from CERCLA, it undoubtedly would have placed the exclusion with that for petroleum and natural gas.

■ Finally, the Court notes that the Solid Waste Disposal Act, in exempting mine and mill wastes from regulation pending a study, specifically states that "each waste listed below shall ... be subject only to regulation under other applicable provisions of Federal or State law in lieu of this subchapter ...." 42 U.S.C. § 6921(b)(3)(A). That indicates that Congress intended that mine and mill wastes still be regulated under other federal laws.

Because the statutory language is clear, it is not necessary to engage in a lengthy analysis of the legislative history and administrative interpretation of CERCLA, both of which issues were argued by the parties. After reviewing the sparse legislative history, the Court finds that it is inconclusive and does not indicate a clear intent to completely exclude mine and mill wastes from CERCLA regulation. *See* statement of Rep. Florio, 126 Cong.Rec. H11,789; S.Rep. No. 848, 96th Cong., 2d Sess. 28 (1980). Moreover, the most authoritative expression of Environmental Protection Agency policy is that mine and mill wastes should be considered hazardous substances under CERCLA if they meet any of the other criteria in section 9601(14). *See* Amendment to National Oil and Hazardous Substance Contingency Plan; National Priorities List, 48 Fed.Reg. 40,658, 40,663 (Sept. 8, 1983).

■ Defendants also argue that the type of asbestos found in Globe should not be considered a "hazardous substance" under CERCLA because it is not, in fact, hazardous to human health. Even if this should be so, the defendants' argument must be rejected because the asbestos in question, chrysotile asbestos, is specifically listed under the Clean Air Act at 40 C.F.R. § 61.-21(a). If chrysotile asbestos is not hazardous, it is for Congress to make that judgment and provide an exemption.

■ In summary, the Court concludes that waste from the mining or milling of asbestos is a hazardous substance under CERCLA, by virtue of the regulation of asbestos under 33 U.S.C. § 1317(a) (the Federal Water Pollution Act) and section 112 of the Clean Air Act. 42 U.S.C. § 9601(14)(D) and (E). The Court also finds that chrysotile asbestos is included within that definition of hazardous substance. *See* 40 C.F.R. § 61.21(a).

## THE "FACILITY" REQUIREMENT

■ Among the elements of proof of a violation of 42 U.S.C. § 9607 is a showing that a defendant is the owner or operator of a "facility," or was at the time of disposal of hazardous wastes at the "facility." Plaintiff United States has moved for summary judgment that the Mountain View Mobile Home Estates is a "facility" within the meaning of CERCLA.

"Facility" is defined in 42 U.S.C. § 9601(9) as:

> (A) any building, structure, installation, equipment, pipe or pipeline ... well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located....

Thus, in order to show that an area is a "facility," the plaintiff need only show that a hazardous substance under CERCLA is placed there or has otherwise come to be located there.

■ The government has presented an affidavit from Henry A. Anderson, a doctor who specializes in epidemiology and occupational medicine. Anderson's affidavit stated that he reviewed data showing asbestos was present at Mountain View Mobile Home Park, that he personally observed fibers on the surface of the ground that could be released in a light wind, and that these fibers were tested and proved to be asbestos. *See* Anderson affidavit at 2–3. An affidavit from Richard L. Hatfield, a geologist and asbestos consultant

who tested the soil at and around the Mountain View subdivision, also states that asbestos was present at the site. *See* Hatfield affidavit at 3–4; Hatfield letter to CH₂M Hill Inc., summary of boring logs, and map showing boring locations, attached to affidavit. Defendants have submitted no evidence contradicting these affidavits. Therefore, the Court finds that a hazardous substance is present at the Mountain View Mobile Home Estates, making it a "facility" under 42 U.S.C. § 9601(9).

The government did not move for summary judgment on the issue of whether the Jaquays site adjacent to Mountain View is a "facility." The Jaquays defendants apparently concede that asbestos is stored on their site. *See* Jaquays Defendants' Response to Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment at 12; affidavit of D.W. Jaquays, Exh. B to Jaquays Defendants' Reply in Support of Cross-Motion for Partial Summary Judgment.

## RELEASE OR THREATENED RELEASE

The final element of section 9607 liability at issue is the requirement that there be a "release" or threatened release of the hazardous substance. In order to recover costs, a plaintiff must show that such a release, from a facility, caused expenditure of the response costs sought by plaintiff. The issues of causation and response costs are not before the Court at this time.

■ A "release" is defined by section 9601(22), which states in part:

> (22) "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment....

In order to prevail, a plaintiff must show either a release resulting in costs of remedial action or a threatened release resulting in response costs. 42 U.S.C. § 9607(a).

■ As discussed above, the Anderson affidavit stated that he personally observed fibers appearing to be asbestos, which

when tested proved to be asbestos, lying on the surface of the soil at the Mountain View subdivision. He also stated that these fibers could be released in a light wind. This evidence is sufficient to show that there is a threat of a release of asbestos at the Mountain View Mobile Home Estates.

As to the Jaquays site, the government offered two affidavits on the issue of a release from that site. Chatten Cowherd, Jr., a research scientist-engineer specializing in air quality assessment and control, stated that asbestos from the tailings piles would be subject to release in a wind. Jon Dahl, an air pollution control engineer for the Arizona Department of Health Services, stated in his affidavit that he observed a release of asbestos from the Jaquays site during high winds on July 5, 1983. Dahl also said that, before the release on July 5, 1983, he noticed that the tailings piles were very dry and could be released in a wind.

The Jaquays defendants offered an affidavit from D.W. Jaquays, in which he said that the asbestos tailings on his property were covered by a quarter-inch crust, created by a sprinkler system and rainfall, which would prevent release in a wind. This statement clearly does not refute Mr. Dahl's statement that he observed a release. It may, however, raise a question as to whether there is a continuing threat of release. The Court finds that at least one release of a hazardous substance has occurred at the Jaquays site, and there is a question of fact as to whether there is a threat of future release.

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED as to these issues: that asbestos mine and mill wastes, including chrysotile asbestos wastes, are within the CERCLA definition of hazardous substance; that the Mountain View Mobile Home Estates is a facility under CERCLA; that there is the threat of a release from the Mountain View Mobile Home Estates; and that there has been at least one release from the Jaquays mill site. Defendants' cross-motions for summary judgment are DENIED.