## UNITED STATES of America

### v.

## UNION GAS COMPANY

### v.

## The BOROUGH OF STROUDSBURG.

### Civ. A. No. 83–2456.

United States District Court,
E.D. Pennsylvania.

May 25, 1984.

See also. D.C., 575 F.Supp. 949.

---

Edward S.G. Dennis, Jr., U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Joseph J.C. Donovan, U.S. E.P.A., Region III, Philadelphia, Pa., for plaintiff.

David H. Marion, Robert A. Swift, Philadelphia, Pa., for Union Gas Co.

Ralph A. Matergia, Stroudsburg, Pa., for Borough of Stroudsburg.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

This action was brought by the United States of America against Union Gas Company under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* and the Clean Water Act, 33 U.S.C. § 1251 *et seq.* The government seeks to recover funds it spent to clean up coal tar released by a predecessor of Union Gas from a facility located in Stroudsburg, Pennsylvania. Presently before the court is defendant Union Gas's motion for summary judgment on the CERCLA claim only, the government having withdrawn the Clean Water Act claim set forth in the original complaint at a hearing held in open court on April 13, 1984. For the reasons set forth below, the motion will be denied.[1]

---

1. Plaintiff filed a motion to amend the complaint which the court granted in part and denied in part on May 16, 1984. The issues raised by the present motion for summary judgment were not mooted by the amended complaint.

Before discussing the merits of defendant's motion, a review of the pertinent statutory sections is necessary. First, subsection 104(a)(1) of CERCLA, 42 U.S.C. § 9602(a)(1), authorizes the government to act to remove and take appropriate remedial action whenever any hazardous substance is released into the environment or there is a substantial threat of such a release. Next, subsection 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that the owner or operator of a facility shall be liable for all costs of removal or remedial action incurred by the United States as a result of a release or substantial threat of a release of a hazardous substance into the environment. Finally, subsection 101(14) of CERCLA, 42 U.S.C. § 9601(14), defines the term "hazardous substance" by reference to definitions and designations under sections of four other federal statutes—the Clean Water Act, 33 U.S.C. §§ 1317(a) and 1321(b)(2)(A); the Solid Waste Disposal Act (also known as the Resource Conservation and Recovery Act), 42 U.S.C. § 6921; the Clean Air Act, 42 U.S.C. § 7412; and the Toxic Substances Control Act, 15 U.S.C. § 2606.

> "hazardous substance" means (A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a haz-ardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas);

42 U.S.C. § 9601(14).

Under the plain language of this subsection, a material is a hazardous substance if it comes within any of the listed statutory sections. The coal tar constituents acenaphthene, ethylbenzene, fluoranthene, phenanthrene and pyrene are listed as toxic pollutants under the regulation implementing section 307(a) of the Clean Water Act, 33 U.S.C. § 1317(a), 40 C.F.R. Part 401.15 (1983). Additionally, coal tar constituents napthalene and xylene are designated as hazardous substances under the regulation implementing section 311(b)(2)(A) of the Clean Water Act, 33 U.S.C. § 1321(b)(2)(A), 40 C.F.R. Part 116.4. It would thus appear that these materials are hazardous substances under CERCLA section 9601(14)(A) and (D).

Defendant contends, however, that even though these seven coal tar constituents are within the categories subscribed by subsections (A) and (D) of CERCLA section 9601(14), they are nonetheless exempt from CERCLA's definition of hazardous waste under subsection (C) of section 9601(14). Subsection (C) states that the term hazardous substance includes:

> any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act ... *(but not including any waste the regulation of which under the Solid Waste Disposal Act ... has been suspended by Act of Congress )*.

42 U.S.C. § 9601(14)(C) (emphasis added). Defendant points to the following suspension in the Solid Waste Disposal Act, found at 42 U.S.C. § 6921(b)(3)(A):

> Notwithstanding the provisions of paragraph (1) of this subsection, [which directs the Environmental Protection Agency to identify and list particular hazardous wastes] each waste listed be-

low shall ... be subject only to regulation under other applicable provisions of Federal or State law in lieu of this subchapter until at least six months after the date of submission of the applicable study ...:

\*     \*     \*     \*     \*     \*

(ii) Solid waste from the extraction, beneficiation, and processing of ores and minerals, including phosphate rock and overburden from the mining of uranium ore.

In light of this suspension and considering CERCLA's parenthetical incorporation of it in subsection (C), 42 U.S.C. § 9601(14)(C), defendant makes this argument: first, that the coal tar at issue was produced during the gasification of coal and thus falls within the suspension for "[s]olid waste from the ... processing of ores and minerals;" and second, that this suspension not only restricts the definition of wastes that under subsection (C) are to be considered hazardous substances, it also applies broadly to all other subsections of section 9601(14). Thus, according to defendant, even though a substance might be designated as hazardous under the Clean Water Act, (subsections (A) or (D)), it would be exempt from CERCLA regulation if it fell within one of the suspensions of the Solid Waste Disposal Act (subsection (C)).

Plaintiff, not surprisingly, argues just the opposite. Plaintiff first takes the position that coal tar, an allegedly indirect by-product of coal gasification, is not produced by "processing" coal but is produced during an optional treatment of the gas which can be created from coal. As such, coal tar does not fall within the mineral processing suspension incorporated into subsection (C). Second, plaintiff asserts that even if coal tar could be considered to fall within the mineral processing suspension, it still would not escape regulation under CERCLA since several of its constituent elements are identified in the Clean Water Act referenced in subsections (A) and (D) of section 9601(14) of CERCLA. Thus, under plaintiff's view, even if a substance is not included in CERCLA's hazardous substance definition because of the parenthetical exclusion in subsection (C), that substance would still be a hazardous substance under CERCLA if it was identified by another subsection. After careful consideration of the language of CERCLA, and the language and legislative history of the mineral processing suspension, the court agrees with plaintiff that the exclusion of subsection (C) does not have general effect. It is therefore unnecessary to address the issue of whether coal tar is actually within the mineral processing suspension.

As a straightforward reading of section 9601(14) discloses, it does not appear that the exception of subsection (C) was meant to have preemptive effect as to substances included in CERCLA by reason of other subsections. To the contrary, a reading of the entire section shows that following the list set out in subsections (A) through (E) which designates certain wastes as hazardous by referencing other statutes, there is a separate sentence which states that under CERCLA the term hazardous substance does not include petroleum, natural gas or synthetic gas usable for fuel. Given this general exclusion for petroleum and gas stated in a separate sentence at the end of section 9601(14), it is unlikely that Congress intended the limitation of subsection (C), which is in the middle of the inclusive portion of section 9601(14), to have a general preemptive effect. Surely if this was what Congress had intended, it would have placed the subsection (C) limitation in the separate sentence concerning the general exclusion for petroleum and gas. Because Congress did not do so, it is logical to conclude that the limitation of subsection (C) applies only to subsection (C), and does not affect wastes listed under other subsections.

Any doubt the court may have had on this point is dispelled by both the language and the legislative history of section 6921 of the Solid Waste Disposal Act which sets out the mineral processing suspension itself. As quoted previously, section 6921(b)(3)(A) states that exempted wastes shall still "be subject ... to other applicable provisions of Federal or State law." Fitting within this category is the Clean Water Act, which regulates the substances

in dispute here and which was in place prior to the enactment of the Solid Waste Disposal Act.[2] From the clear language of section 6921(b)(3)(A) itself, it is perfectly plain that in enacting the suspension, Congress was aware of specific laws such as the Clean Water Act, which already regulated certain substances which might come within the suspension. It is also plain that in cases of overlap, Congress intended the suspension to be preempted.

It is worth noting that the purpose of the suspension, revealed in the statutory language itself, was to give Congress time to study the adverse effects of mineral processing wastes. Obviously, if certain substances had already been designated as hazardous or toxic under other statutes then it would appear that additional study of such substances would not have been warranted and suspension of their regulation would serve no useful purpose. This is probably the reason why Congress directed that wastes subject to suspension under section 6921(b)(3)(A) would still be regulated under other applicable provisions of federal or state law.

Considering that the suspension of section 6921(b)(3)(A) of the Solid Waste Disposal Act itself preserved the effect of laws concurrently regulating certain substances, it makes no sense to give the suspension preemptive effect in the context of CERCLA subsection (C). The District of Arizona, which recently addressed this same issue regarding the scope of the subsection (C) exclusion, came to the same conclusion in *United States v. Metate Asbestos Corp.*, 584 F.Supp. 1143, C.A. No. 83–309 (D.Ariz. April 10, 1984). The Environmental Protection Agency also takes this position. *See* Amendment to National Oil and Hazardous Substance Contingency Plan; National Priorities List, 48 Fed.Reg. 40,658, 40,663 (1983).

In sum, the court concludes that the coal tar constituents at issue here, acenaphthene, ethylbenzene, flouranthene, phenanthrene, pyrene, napthalene and xylene, are hazardous substances under CERCLA by reason of CERCLA's definition section, § 9601(14)(A) and (D). For the reasons set out above, the court rejects defendant's argument that these substances are exempt from CERCLA coverage in view of section 9601(14)(C). Defendant's motion for summary judgment will accordingly be denied.

**2.** Sections 307(a) and 311(b)(2)(A) of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, were added to the original statute on October 18, 1972 by Pub.L. 92–500, § 2, 86 Stat. 856 and 962, respectively. Pursuant to section 1321(b)(2)(A), napthalene, xylene and ethylbenzene were identified as hazardous substances in 1978, see 43 Fed.Reg. 10,474 and 27,533 (1978); 40 C.F.R. Part 116 (1978), and pursuant to section 1317(a), ethylbenzene, napthalene, acenaphthene, and flouranthene were identified as toxic pollutants in 1979. See 44 Fed.Reg. 44,502 (1979); 40 C.F.R. 401.15 (1980). The mineral processing suspension set out in section 6921(b)(3)(A) of the Solid Waste Disposal Act, 42 U.S.C. § 6901 *et seq.*, was not added until October 21, 1980. See Solid Waste Disposal Act Amendments of 1980, Pub.L. 96–482, § 7, 94 Stat. 2334, 2337 (1980).