

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2007

# USA v. Cramer

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1004

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Cramer" (2007). *2007 Decisions*. Paper 1791.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1791

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1004
_____

UNITED STATES OF AMERICA

v.

COREY C. CRAMER,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cr-00184)
District Judge:  Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2006

Before:  FISHER and CHAGARES, *Circuit Judges*,
and BUCKWALTER,* *District Judge*.

(Filed January 10, 2007)
_____

OPINION OF THE COURT
_____

*The Honorable Ronald L. Buckwalter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

BUCKWALTER, *District Judge*.

Before the court is the appeal of Corey C. Cramer from the judgment imposed on December 19, 2005 by which he was sentenced to 192 months imprisonment to be followed by three (3) years of supervised release.

## I.

The issues on appeal as framed by Cramer are

1.  WHETHER A PLAIN READING OF SECTION 2251(b) OF TITLE 18 OF THE UNITED STATES CODE, 18 U.S.C. §2251(b), EMPLOYING STANDARD STATUTORY AND GRAMMATICAL CONSTRUCTION, CONFIRMS AN ABSENCE OF FEDERAL JURISDICTION?

2.  WHETHER THE INTRASTATE, NON-COMMERCIAL PRODUCTION OF CHILD PORNOGRAPHY FOR PERSONAL USE WITH MATERIALS TRANSPORTED IN INTERSTATE COMMERCE PROVIDES A SUFFICIENT AND PROPER BASIS FOR FEDERAL JURISDICTION UNDER THE COMMERCE CLAUSE?

3.  WHETHER THE DISTRICT COURT ERRED IN APPLYING A VULNERABLE VICTIM ENHANCEMENT TO APPELLANT'S SENTENCING GUIDELINE RANGE WHEN THIS CIRCUMSTANCE WAS INCORPORATED INTO THE OFFENSE GUIDELINE?

## II.

Cramer was indicted May 11, 2005, on four counts of knowingly permitting a minor to engage in sexually explicit conduct for purposes of producing a visual depiction of such conduct in violation of 18 U.S.C. § 2251(b).  On September 12, 2005, he entered a conditional plea to Count One preserving for review the first two issues cited above.

The district court denied a motion to dismiss based on those two issues and at a sentencing hearing on December 19, 2005, also denied Cramer's objection to the Presentence Report which assessed two extra points in applying a vulnerable victim enhancement.

**III.**

Our standard of review of the first two issues is plenary. Below is the statute under which Cramer was prosecuted (18 U.S.C. § 2251):

> (b)     Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection (e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, <u>or</u> if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

As the district court found with regard to the first issue, "Defendant's reading of § 2251(b) is strained and unsupported by law." Thus, under the statute as interpreted by that court, any person, legal guardian or person having custody or control of a minor . . . shall be punished if just one of the following three conditions are met:

> (1)     if he knows or has reason to know that such visual depiction will be transported in interstate commerce or mailed; or
> (2)     if the visual transmission was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce; or

3

(3)    if such visual depiction has actually been transported in interstate commerce or mailed.

Cramer argues otherwise. His contention is that where the violation, as in 18 U.S.C. § 2251(b), is premised on intrastate conduct involving a visual depiction produced using materials that have been mailed, shipped or transported in interstate or foreign commerce, the government must also demonstrate that either: (1) the parent, legal guardian or person knew or had reason to know that such visual depiction would be transported in interstate or foreign commerce or mailed; or (2) that the visual depiction was actually so transported or mailed. We disagree.

The only opinion of this court which Cramer cites with respect to this issue is United States v. Hodge, 321 F.3d 429, 436 (3d Cir. 2003). In Hodge, the statute involved was clearly distinguishable from the one in this case. This court, before whom the interpretation of the statute was a matter of first impression (Hodge at 433), accepted the conjunctive reading of the statute as five district courts had concluded (Hodge at 436).

Hodge is helpful because following its analysis demonstrates why Cramer's argument is misplaced. The statute in Hodge provided in brief that a controlled substance analogue shall be treated as a controlled substance. The issue in this case was whether the mixture of candle wax and flour was a controlled substance analogue, which was defined as follows:

> [With certain exceptions not relevant here,] the term "controlled substance analogue" means a substance –

4

(i)      the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii)     which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii)    with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

The government argued for a disjunctive interpretation so that a substance would be a controlled substance analogue if it satisfied any one of clauses (i), (ii) or (iii). We held, however, that clause (i) states an independent requirement and clauses (ii) and (iii) read in parallel and are more subordinate to clause (i) because the functional language in each begins with the relative pronoun "which." In this regard, we said:

> The doctrine of the last antecedent teaches that "qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding" and not to "others more remote." *See Resolution Trust Corp. v. Nernberg*, 3 F.3d 62, 65 (3d Cir. 1993) (quoting *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975)). That suggests that clauses (ii) and (iii) more likely modify clause (i)'s phrase "controlled substance in schedule I or II" than the word "substance" in the main clause. *See also* 2A Norman J. Singer, *Sutherland Statutory Construction*, § 47.33 (6th ed.2000).

Following that doctrine, the statute before us cannot be read, as Cramer suggests, to set forth an independent requirement of intrastate conduct involving a visual depiction using materials that have been mailed, shipped, or transported in interstate or foreign

5

commerce as to which the remaining clauses (1 and 3 on pages 3 and 4 of this opinion) involving either reason to know of actual transportation in interstate or foreign commerce are subordinate. Instead, all three clauses (1, 2 and 3 on pages 3 and 4 of this opinion) are applied to the words or phrases immediately preceding them in the opening clause of 18 U.S.C. § 2251 (b), [any parent, legal guardian or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection (e) of this section, . . . .] and qualify the independent conditions, for which the violation of any one will result in punishment. In addition, Hodge reiterates that "cannons of construction ordinarily suggest that terms connected by a disjunctive be given separate meaning unless the context dictates otherwise," Hodge at 436. The context here, unlike Hodge, does not dictate otherwise.

## IV.

As to the second issue, Cramer concedes that this court has upheld the constitutionality of the same jurisdictional language in United States v. Galo, 239 F.3d 572, 575 (3d Cir. 2001) citing United States v. Rodia, 194 F.3d 465, 473 (3d Cir. 1999). Nevertheless, he urges us to revisit those two decisions in light of United States v. Morrison, 529 U.S. 598, 120 S. Ct. 740 (2000) and Gonzales v. Raich, 545 U.S. 1, 125 S. Ct. 2195 (2005). Neither of those cases, however, would effect our analysis in either Galo or Rodia.

6

Morrison, decided May 15, 2000, six days after our argument on May 9, 2000 in Galo, dealt with a statute, 42 U.S.C. § 13981, that provided a federal civil remedy for gender motivated violence. The victim in Morrison alleged she had been raped by the two respondents while the three were students at Virginal Polytechnic Institute.

After referring to its principles underlying Commerce Clause jurisprudence, the Court in Morrison found that gender motivated crimes of violence are not economic activity.

The Court's analysis in Morrison discussed at length the Commerce Clause interpretation set forth in United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995) in which the Court identified the three broad categories of activities that Congress may regulate under its commerce power. In brief, they are:

1.   The use of channels of interstate activity;
2.   The instrumentalities of interstate commerce, or persons or things in interstate commerce even though the threat may come only from intrastate commerce; and
3.   Those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

This court in Rodia discussed the three categories above and concluded that Congress had a rational basis for concluding that the intrastate possession of pornography has a substantial effect on interstate commerce. There is nothing in Morrison to suggest that this analysis was not correct.

In Raich, decided June 6, 2005, the respondents (Raich, et al.), California residents who both used doctor recommended marijuana, relied heavily on Lopez and Morrison in

7

seeking to enjoin the Federal Drug Enforcement Administration (DEA) from enforcing the Federal Controlled Substance Act (CSA) to the extent it prevents them from the manufacture, possession or use of marijuana for personal medical care because it would violate the Commerce Clause.

The Court held initially that <u>Lopez</u> and <u>Morrison</u> had nothing to do with commerce. It concluded that even though the case for exemption in <u>Raich</u> was that a locally cultivated product that was used domestically rather than sold on the open market is not subject to federal regulation, given the findings in the CSA and the undisputed magnitude of the commercial market for marijuana, such a claim for exemption is foreclosed.

Analytically, the same conclusion was reached in <u>Rodia</u> where we held after an exhaustive analysis by the late Chief Judge Becker "that Congress rationally could have believed that child pornography that did not itself travel in interstate commerce has a substantial effect on interstate commerce, and is thus subject to regulation under the Commerce Clause." <u>Rodia</u> at 479. We see no reason to disturb that ruling.

### V.

The third issue argued by Cramer is that the circumstance which the court found in applying a vulnerable victim enhancement (paragraph 24 of the presentence report) was already incorporated into the specific offense characteristics and thus resulted in double counting. The net effect of this alleged error is that Cramer would have had a total offense level of 28 instead of 30 for a guideline range of 78-97 months rather than 97-121

8

months.  In any event, with the mandatory 10-year sentence, the effective guideline range under a total offense level of 28 would be 120 months.

Specifically, the presentence report, which the court adopted, provided as follows:

20.  **Base Offense Level:**  The guideline for an 18 U.S.C. § 2251(b) offense is U.S.S.G. § 2G2.1.  That section provides a base offense level of twenty-seven.  **27**

21.  **Specific Offense Characteristics:**  Because the offense involved a victim who had attained the age of twelve years, but not attained the age of sixteen years, a two-level increase is required pursuant to U.S.S.G. § 2G2.1(b)(1)(B).  **+2**

22.  Because the minor victim was in the custody, care or supervisory control of the defendant, a two-level increase is required pursuant to U.S.S.G. § 2G2.1(b)(2).  **+2**

23.  **Adjustment for Role in the Offense:**  None.  **0**

24.  **Victim-Related Adjustments:**  Pursuant to U.S.S.G. § 3A1.1(b)(1), because the defendant knew or should have known that his "stepdaughter" was a vulnerable victim, a two-level increase is required.  **+2**

25.  **Adjustment for Obstruction of Justice:**  None.  **0**

26.  **Adjusted Offense Level:**  Thirty-three.  **33**

27.  **Adjustment for Acceptance of Responsibility:**  Based on the defendant's guilty plea and his admissions to the Court and probation officer, a two-level reduction appears warranted under U.S.S.G. § 3E1.1(a).  It appears that the defendant provided complete information to the Government concerning his involvement in the offense.  Accordingly, the additional one-level reduction under U.S.S.G. § 3E1.1(b) seems warranted.  **-3**

28.  **Chapter Four Enhancements:**  None.  **0**

29.  **Total Offense Level:**  Thirty.  **30**

9

From reading the court's statement at sentencing and its statement of reasons in its criminal judgment order, it is clear that in adding two points pursuant to U.S.S.G. § 3A1.1(b)(1), the court found that the victim was unusually vulnerable for reasons unrelated to those already accounted for in the specific offense characteristics. Specifically, in its written statement of reasons about Cramer, who was not the biological father of the victim but had been romantically involved with the victim's mother for twelve years, the court said:

> His conduct spanned years, not months. Defendant's conduct was unusually cruel and depraved. Defendant was not a parent or care giver in name only. He enjoyed a strong emotional bond and a long history with the child victim, who since the age of three looked to him as the only father she had known, even during the course of the rapes, calling him "Daddy." Although a sexual offender with parental authority enjoys the ability to subtly coerce, and the guidelines account for this, Defendant's parental coercion exceeded the ordinary case. He deliberately used his position as a parent and caretaker to overcome the victim's will. Defendant lauded his parental power over the victim, specifically threatening the victim with punishment and the withdrawal of financial support if she refused to comply. When she attempted to resist his advances, Defendant used force and violence. Defendant's conduct was unusually cruel and depraved in that Defendant psychologically manipulated the victim to submit to his unlawful requests. Defendant induced the victim to submit to lewd photographs by promising to refrain from raping her. All of the circumstances cause the Court to conclude that the offense is unusually aggravated, even for an offense of this nature, and that by virtue of the particular facts, the victim was unusually vulnerable and thus subject to unusual psychological harm.

We find no error in the Court's conclusion (*See* App. 125, lines 81.14) that an enhancement under U.S.S.G. § 3A1.1(b)(1) was warranted.

**VI.**

10

Based upon the foregoing, we will affirm the judgment entered in this case on December 23, 2005.