**Mason H. ROSE et al.,**
**Plaintiffs-Appellants,**

v.

**UNITED STATES POSTAL SERVICE,**
**Defendants-Appellees.**

No. 83–5830.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1983.

Decided Feb. 16, 1984.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 31, 1985.

Stanley Fleishman, Los Angeles, Cal., for plaintiffs-appellants.

Thomas Millet, Washington, D.C., for defendants-appellees.

Before HUG and FLETCHER, Circuit Judges, and INGRAM,[*] District Judge.

FLETCHER, Circuit Judge:

Plaintiffs [1] appeal on behalf of handicapped persons the dismissal of their action for declaratory and injunctive relief to require the United States Postal Service to make all buildings leased by the Postal Service after January 1, 1977 accessible to handicapped persons and to enjoin the Postal Service from leasing buildings that are not accessible.[2] The district court held that the Postal Service had no duty to provide handicapped access to leased buildings under the Architectural Barriers Act, 42 U.S.C. §§ 4151–4157 (1976), under sections 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791, 794 (1976 & Supp. II), or under the Equal Protection Clause of the Fifth Amendment, U.S. Const., Amend. V. *See Rose v. United States Postal Service,* 566 F.Supp. 367 (C.D.Cal.1983). We reverse.

## DISCUSSION

The Architectural Barriers Act (Barriers Act) requires that buildings constructed or leased by the federal government be made accessible to handicapped persons. The issue before us is one of timing. The Postal Service argues that the Act requires leased buildings to comply when they are altered for some reason other than handicapped access. Plaintiffs argue that the Government must require compliance as a condition of the lease. The dispute centers on

---

[*] Hon. William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

1. Plaintiff Mason H. Rose is the former chairperson of the Architectural and Transportation Barriers Compliance Board. The Paralyzed Veterans of America and the Darrell McDaniel Independent Living Center are also named plaintiffs. An amicus curiae brief has been filed by the Center for Law and Social Policy on behalf of four members of Congress, who were sponsors of the legislation at issue in this case (Bob Edgar, James McNulty, Norman Y. Mineta, and James L. Oberstar).

The Postal Service argues that the Paralyzed Veterans of America (PVA) lacks standing. Plaintiffs allege that "[M]any members of PVA ... have been excluded from buildings and facilities operated by the ... Postal Service." The Darrell McDaniel Independent Living Center makes similar allegations. These allegations are an adequate predicate for standing to maintain the action. *See Williams v. United States,* 704 F.2d 1162, 1163 (9th Cir.1983).

2. The Postal Service leases approximately 28,000 buildings, of which the Architectural and Transportation Barriers Compliance Board estimates 15,000–20,000 are inaccessible to handicapped persons.

whether leasing or alteration is the event that triggers the Government's duty under the Act.

Plaintiffs argue that the Rehabilitation Act imposes a similar duty on the Government under the provisions prohibiting discrimination against handicapped persons in Government programs and those requiring affirmative programs for hiring handicapped persons. Plaintiffs also rely on the Equal Protection Clause.

## I. The Architectural Barriers Act.

### A. Statutory Language.

The parties disagree as to which of two provisions in the Barriers Act controls the Government's duty to make alterations in leased buildings for handicapped access. The resolution of this issue depends on whether we view section 4a or section 5 as the operative section of the Act.

Section 4a of the Barriers Act provides:

The United States Postal Service, in consultation with the Secretary of Health, Education, and Welfare, shall prescribe such standards for the design, construction, and alteration of its buildings to insure whenever possible that physically handicapped persons will have ready access to, and use of, such buildings.

42 U.S.C. § 4154a. "Buildings" includes all buildings or facilities (with certain ex-

ceptions not relevant here)[3] "to be leased in whole or in part by the United States after [January 1, 1977]."[4] 42 U.S.C. § 4151.

Section 5 provides:

Every building designed, constructed, or altered after the effective date of a standard issued under this chapter which is applicable to such building, shall be designed, constructed, or altered in accordance with such standard.

42 U.S.C. § 4155.

Plaintiffs and amici argue that the operative section of the Act is section 4a; that it requires the Postal Service to prescribe standards to alter buildings to make them accessible to the handicapped. Section 5, they argue, requires that the Postal Service follow its own standards when it undertakes that alteration.

The Postal Service, on the other hand, argues that section 5 is the operative provision; that it requires the Postal Service to alter buildings to make them accessible only when the buildings are otherwise being altered, and that it is only required to make accessible those *portions* of buildings that are being altered.[5]

In adopting the Postal Service's interpretation, the district court did not go beyond the statutory language because it found the language clear.[6] Amici and the Postal

---

**3.** Section 4151 excepts:

(A) a privately owned residential structure not leased by the Government for subsidized housing programs and (B) any building or facility on a military installation designed and constructed primarily for use by able bodied military personnel.

**4.** Although the date remains August 12, 1968 in the text of the statute, under Pub.L. No. 94–541, § 201–02, 90 Stat. 2507–08 (1976), the effective date of the 1976 amendment is January 1, 1977. *See* 42 U.S.C.A. § 4151, note (West 1977).

**5.** In oral argument, counsel for the Postal Service took a very restrictive view of the meaning of the term "alteration." He argued that the Service was required to make accessible only that portion of a building which was being altered, not the entire building. He asserted that if a door were to be replaced, the new door would have to be accessible to handicapped

persons, but the steps leading up to that door need not be accessible.

We find no support for this position in the language of the statute or the legislative history. Indeed, the literal language of the statute would seem to require that if *any* alteration were made in the building the entire building would have to be made accessible. Since we hold that alteration is not the event that triggers the obligation to make the building accessible, we do not reach the definition of "alteration."

**6.** The district court was troubled by an apparent "anomaly" if plaintiffs' interpretation of the Barriers Act were adopted. A building purchased by the government, but not altered, would never be required to comply with the Act, while a temporarily leased facility must comply. The term "construction" is not defined in the Barriers Act, but is defined in the Rehabilitation Act to include "acquisition." 29 U.S.C. § 706(1) (1976). We need not decide today what the

Service agree with the district court that the language is clear, but they urge opposite meanings from the "clear language." Plaintiffs' contention that the language is ambiguous gains strength not only from the vigorous disagreements among amici and the parties, but from the about-face in statutory interpretation of the statute made by the Architectural and Transportation Barriers Compliance Board, the entity charged with adopting regulations to implement the Act.[7] In view of the Board's present position that it does not know the meaning of the statute and our own difficulties in deriving the meaning from the language alone, we agree with plaintiffs that the statutory language is ambiguous. We turn to the legislative history for such illumination as it can bring.[8]

### B.  Legislative History.

#### 1.  The 1968 Barriers Act.

The overall purpose of the Barriers Act, as passed in 1968, is not in doubt.  It was "to insure that all public buildings constructed in the future by or on behalf of the Federal Government or with loans or grants from the Federal Government are designed and constructed in such a way

that they will be accessible to and usable by the physically handicapped."  S.Rep. No. 538, 90th Cong., 1st Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 3214, 3215.

The original statute defined a building for purposes of the Act as

> any building or facility ... the intended use for which either will require that such building or facility be accessible to the public, or may result in the employment or residence therein of physically handicapped persons, which building or facility is—
>
> (1) to be constructed or altered by or on behalf of the United States;
>
> (2) to be leased in whole or in part by the United States after [August 12, 1968], after construction or alteration in accordance with plans and specifications of the United States; or
>
> (3) to be financed in whole or in part by a grant or a loan made by the United States after the date of enactment of this Act if such building or facility is subject to standards for design, construction, or alteration issued under authority of the law authorizing such grant or loan.

interpretation under the Barriers Act might be. We do suggest that even were the district court's interpretation of "construction" correct, the possibility that the government could purchase a building completely suitable to its needs for postal operations without alteration is highly unlikely.

**7.** The Architectural and Transportation Barriers Compliance Board originally took the position that "A building leased after January 1, 1977, must comply with the standards issued under the Architectural Barriers Act at the time it is leased rather than at any subsequent period." Approved Minutes, Meeting, Architectural and Transportation Barriers Compliance Board, October 31, 1980 at 14–15.  *See also* 45 Fed.Reg. 4278 (January 16, 1981).

After a change in membership, the Board revised the regulation to adopt a "neutral" position.  See 36 C.F.R. § 1190.34(c) (1982).  To the extent that we give deference to agency interpretations, as the Postal Service argues we must, this supports our conclusion that the statute is ambiguous.  We do not view the Board's change in position, however, as necessarily supporting

the interpretation of the statute urged by the Postal Service.  *See Motor Vehicle Mfgr's Ass'n v. State Farm Mutual,* 463 U.S. 29, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance.").

**8.** An alternative approach suggested by plaintiffs—that the failure of Congress to amend Section 4155 was simply an inadvertent oversight and that supplying that oversight makes the statutory language unambiguous—has some merit.  The Supreme Court has stated that "a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute ...." *Bob Jones University v. United States,* 461 U.S. 574, 585, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983).  *See also United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 542–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).  To take this approach, however, we must look to the legislative history, as a first step, so that we may know what Congress intended.

Pub.L. No. 90–480 § 1, 82 Stat. 718 (1968).[9]

The statute has been modified in two important respects. The definition of buildings is now less restrictive than in the 1968 Act, and the Postal Service has been designated a standard-setting agency.[10]

### 2. The 1975 GAO Report.

The 1976 amendments to the Act had their genesis in a 1975 General Accounting Office (GAO) report submitted to Congress summarizing the findings of its inspection of federally-financed buildings. *See* Comptroller General, *Further Action Needed to Make All Buildings Accessible to the Physically Handicapped* (July 15, 1975) (GAO Report). The report found that "[t]he Architectural Barriers Act had only a minor effect on making public buildings barrier free" and that "[n]o building inspected was completely free of barriers...." *Id.* at 6.

The GAO found that "leased buildings were consistently more inaccessible [than federally-owned buildings] and posed the most serious problems to the handicapped." *Id.* at 25. Among the deficiencies in existing law identified by the GAO was the definition of "building" as it applied to federally-leased structures. The GAO explained that the original Act

excludes from coverage those buildings and facilities leased by the Government which have not been constructed or altered pursuant to U.S.-drafted plans and specifications. *Since the Government leases many existing buildings without substantial alteration, the Act's cover-*

*age is incomplete to the extent that those buildings are excluded.*

*Id.* at 28 (emphasis added).

The report belies the Postal Service's argument that the concern of the GAO was the Government's failure to bring leased buildings into compliance when alterations were made. The GAO proposed amendments to the 1968 Act to "[i]mpose a clear statutory mandate that the named agencies are to insure accessibility of public buildings to the physically handicapped," to "[r]emove the present exemption of the Postal Service from coverage under the Architectural Barriers Act" and to "[i]nclude under the Architectural Barriers Act all Government-leased buildings and facilities intended for public use or in which the physically handicapped might be employed as well as all privately owned buildings leased to the Government for public housing." *Id.* at 36–37.

### 3. The 1976 Amendments.

The 1976 Amendments had three components: First, the qualifying clause "after construction or alteration in accordance with plans and specifications of the United States" was removed from section 1(2), making the section applicable to "any building or facility ... to be leased in whole or in part by the United States [after January 1, 1977]". Second, the Postal Reorganization Act, 39 U.S.C. § 410(b), was amended to remove the exemption of the Postal Service from the Act. Third, the Postal Service was designated a standard-setting agency.[11]

---

**9.** The intent of Congress was "that the word 'building' as used in this bill be given the *broadest possible interpretation* ... whether it be a small rest station at a public park or a multimillion dollar Federal office building." S.Rep. No. 538, *supra* at 3216–17 (emphasis added).

**10.** Although the Postal Service was originally covered by the Act, it was not designated as a standard-setting agency. It was totally exempted in 1970 by the provisions of the Postal Reorganization Act of 1970. *See* 39 U.S.C. § 410(a). It appears that this omission may have been unintentional. *See* footnote 14, *infra*. *Cf. Effectiveness of the Architectural Barriers Act of 1968: Hearings Before the Subcommittee on In-*

*vestigations and Review of the House Committee on Public Works and Transportation,* 94th Cong., 1st Sess. 42–43 (1975) [hereinafter 1975 Hearings]. When it was restored to the Act in 1976, it was also given status as a standard-setting agency because of the large number of buildings it operated. *See Public Buildings Cooperative Use: Hearings on HR 15134 Before the Subcommittee on Public Buildings and Grounds of the House Committee on Public Works and Transportation,* 94th Cong., 2d Sess. 147–48 (1976) [hereinafter 1976 Hearings].

**11.** *See supra* note 10.

The amendments as passed are virtually identical to the GAO's language. *Compare* Title II of Pub.L. No. 94–541 *with* GAO Report, *supra*, at 36–39. The legislative history reflects that the amendments were adopted to implement the GAO's recommendations.[12] The House Report reflected that the purpose of the 1976 Amendments was to "strengthen the Act ... with respect to accommodating federally-owned, funded or leased buildings to the physically handicapped." H.R.Rep. No. 1584—Part II, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S.Code Cong. & Admin. News 5566, 5571. Ample evidence exists that Congress intended to close the loophole through which inaccessible buildings were leased without alteration. *See Public Buildings Cooperative Use: Hearings on HR 15134 Before the Subcommittee on Public Buildings and Grounds of the House Committee on Public Works and Transportation*, 94th Cong., 2d Sess. 107 (1976) (statement of Representative Edgar). Representative Edgar stated,

**12.** At hearings on the House bill containing the 1976 amendments to the Barriers Act, Clifford Gould, Deputy Director of the Federal Personnel and Compensation Division of the General Accounting Office, concluded that "title II of HR 15134 is completely responsive to our recommendations for strengthening the Architectural Barriers Act." 1976 Hearings, *supra* note 10 at 113; *see also* 122 Cong.Rec. 33511 (1976) (remarks of Rep. Ginn introducing HR 15134 on the House floor) ("the provisions incorporated in Title II are recommendations made by the General Accounting Office in a report to the Congress").

**13.** Soon after the release of the GAO report, Representative Wright's Subcommittee on Investigations and Review of the House Committee on Public Works and Transportation conducted an investigation "to try to get a fix on just exactly how widespread is noncompliance with this Act, as well as what additional things might need doing to strengthen the Act." 1975 Hearings, *supra* note 9, at 3 (opening statement of Rep. Wright). As a follow-up to the investigation, the Subcommittee held hearings on the effectiveness of the Barriers Act. *Id.* at 2. The hearing record indicates that the Subcommittee focused much attention on the issue of expanding the Barriers Act's coverage to include all government-leased buildings and to include Postal Service buildings and facilities.

The Act [currently] excludes buildings and facilities leased by the Government which were not constructed or altered to government drafted plans and specifications. This provision ... excludes many buildings which were leased to the government without substantial alteration. The amendment ... will solve that problem by including such buildings.

*Id.* at 107–08. *See also id.* at 135 (testimony of Gerrit Fremouw, Deputy Assistant Sec. for Facilities Engineering and Property Management, HEW: "If the lease does not involve construction or alteration, then the accessibility requirement does not now apply. * * * The proposed recission would correct this condition to apply the accessibility requirement to all leases.").[13] The Postal Service itself recognized during the hearings that "the amendment would seem to [require structural modifications] even in the case of short-term leases ...." *Id.* at 147 (testimony of Robert Coven, Director, Office of Programs Planning, Real Estate and Buildings Department, United States Postal Service).[14]

**At those hearings, Walter Meisen of the General Services Administration explained that**
very few leased buildings comply [with the accessibility requirements of the Act]. Under the Act no leased building is required to comply, except one that is altered by designs made by the Federal Government for its occupancy. 1975 Hearings, *supra* note 9, at 75 (testimony of Walter Meisen, Assistant Commissioner for Construction Management, Public Buildings Service, General Services Administration).

**14.** His statement in full was:
We would also like to comment on the amendment to the Barriers Act proposed by section 201(1), which would bring all leased buildings under the act regardless of whether they were constructed in accordance with Government plans and specifications.

The purpose of the present exclusion of leased buildings not constructed in accordance with Government plans was to avoid the costs of renovating used buildings at Government expense.

Structural modifications are ordinarily quite expensive and may redound principally to the benefit of the private lessor rather than the Government lessee or the general public. In this case, the amendment would seem to apply even in the case of short-term leases, which could be even more expensive.

Rather than resorting to such an alternative inflexibly, we believe it is preferable to have

The focus of the Postal Service's argument before us is not to contradict plaintiffs' version of the legislative history, but to argue that Congress could not have intended to require retrofitting because of the high costs. In one sense the argument is beside the point. The amendments did not require that the Postal Service retrofit buildings under existing leases at the time the Act was passed. The Act applies only to buildings leased after January 1, 1977.[15] If the Postal Service had complied with the law for all leases entered into after that date, it would not now be required to retrofit.[16]

In any event, Congress intended that the alterations be done by the private lessor as a condition of doing business with the Postal Service. 1976 Hearings, *supra* at 24–26. Congress was aware that the Government would ultimately bear some cost. The final House report on the 1976 amendments said "The Committee notes some uncertainty

---

the ability to consider other factors, which may affect the extent to which such a step is needed, such as whether or not the same services are available to the handicapped at other Government buildings close by.

Since new buildings can be designed properly at little or no extra cost, all new buildings may be required to be accessible without concern for cost.

But since renovation of buildings that are not accessible may be quite costly, due regard for economy should be shown, and costly renovation should be a last resort.

1976 Hearings, *supra* note 10 at 147.

The Postal Service, however, now interprets section 4a to require it to provide access to handicapped persons only when designing, constructing, or altering one of its buildings. This argument ignores the modification to the definition of "buildings" in section 1. The Postal Service reading would be plausible if section 1 read as it did in the 1968 version. However, without that qualifying clause, this interpretation cannot follow.

The Postal Service's interpretation requires reading an "and" between subsection (1) of section 1 (providing that construction or alteration instigates the duty) and subsection (2) covering leased buildings. However, an *"or"* exists between subsection (3) and (4). Because these items are a list, all must be read as having an "or". *See Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975); *see also* C.D. Sands, 1A *Sutherland Statutes and Statutory Construction* § 21.-14 (4th ed. 1973).

The General Counsel to the Architectural and Transportation Barriers Compliance Board observed:

The USPS interpretation, while having a certain superficial appeal, would achieve absurd results. The USPS view would create a major loophole, of the very nature that Congress, based on a 1975 report from the Comptroller General, was seeking to close .... The USPS interpretation would, in essence, nullify the 1976 amendments to the ABA and perpetuate the evils (inaccessibility) the statute intended to eliminate.

Memorandum from General Counsel to Architectural and Transportation Barriers Compliance Board 3 (October 23, 1980). The Postal Service admits that its position would mean that some buildings would *never* be required to be accessible if they were not altered. We cannot believe that Congress would intentionally create such a loophole in the Act.

Consumer testimony in hearings vividly illustrated the human impact of the Postal Service's position:

As to the U.S. Postal Service being covered under the Architectural Barriers Act, I can only reply "Why not."

Back home in Chicago, I occasionally have to make trips to the post office myself. The post office that is closest is one that allows me to get in the door and absolutely no further. There are steps leading into the main area where business is conducted.

As a result, I usually try to get an employee's attention by requesting a passerby to go to the windows and ask a postal employee to come to me in order that I may conduct my business.

If a passerby is not available, I usually yell. The longer I wait, the louder I yell. Eventually I will be successful and accomplish my business.

However, the entire procedure is demeaning, and afterwards I feel a little frustrated and disappointed knowing that a barrier-free postal facility would eliminate my problem.

1975 Hearings, *supra* note 9 at 44 (statement of David R. Williamson, Executive Director, National Paraplegic Foundation). Representative Wright commented: "I cannot imagine why we exempted the Postal Service in the beginning. If there is any one agency of the government which is used by all the citizens, I would think it would be the Postal Service." *Id.* at 42.

**15.** *See supra* note 4.

**16.** The Postal Service is the only federal agency taking the position that leased buildings are not covered upon leasing. The Postal Service's view is also in conflict with the opinions of the General Counsel of the Architectural and Transportation Barriers Compliance Board, the Attorney General, Office of Legal Counsel, and the Congressional Research Service.

with respect to the ultimate cost of correcting existing deficiencies." H.R.Rep. No. 1584, *supra* at 5571.[17]

The committee report accompanying HR 15134 indicates that the Public Works and Transportation Committee found that the alterations necessitated by the amendments would be economically feasible. It recognized some uncertainty with respect to the ultimate cost for change in existing buildings but did not find this an inhibiting factor. Its overall assessment was that the additional costs resulting from the enactment of these amendments would be minimal. H.R.Rep. No. 1584–Part II, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5566, 5571–72. In addition, Section 6 of the Barriers Act, 42 U.S.C. § 4156, provides a mechanism by which unreasonable and excessive costs

can be avoided by the standard-setting agencies that carry out the mandate to make existing leased facilities accessible.[18]

## II. The Rehabilitation Act.

Plaintiffs and amici argue that the Rehabilitation Act provides an independent basis to require the Postal Service to make its buildings accessible to handicapped persons. The district court rejected their argument. In light of our interpretation of the Barriers Act we need not address the issue, at least in the form posed.[19]

Section 501(b) of the Rehabilitation Act, 29 U.S.C. § 791(b) requires the Postal Service to implement affirmative programs for hiring handicapped individuals.[20] Section 504 of the Rehabilitation Act, 25 U.S.C. § 794, prohibits discrimination against

**17.** The GAO Report concluded that "the cost of eliminating architectural barriers is not substantial," noting:

> Government, private contractors, and design personnel agree that the cost of the accessibility features is negligible when such items are incorporated in the design phase; sometimes, they may even result in cost savings. In addition, *although the cost of altering existing inaccessible buildings is more than that of initial barrier-free construction, it is relatively small when compared to total construction cost.*

Comptroller General, *Further Action Needed to Make All Buildings Accessible to the Physically Handicapped* 87, 92 (July 15, 1975) (GAO Report) (emphasis added). Similarly, Representative Edgar, testifying in support of Title II of the bill, pointed out that

> the cost factor has been highly exaggerated in the past. I would like to bring to the attention of the subcommittee some provocative commentary discounting the cost issue which appears in a HUD report entitled "Barrier-Free Site Design":
>
> "Frequently, the anticipation of extreme costs has stifled discussion and more thorough evaluation of the incorporation of considerations for the handicapped into new construction projects. Even greater anxiety is attached to the likely costs in correcting already-built situations. This apprehension continues, due mostly to the lack of research into the cost/benefit aspects of barrier-free construction. Recent studies have begun to bring information to this subject which indicates that earlier assumptions of costs were, in fact, exaggerated."

1976 Hearings, *supra* note 9 at 107. *See also id.* at 136 (testimony of Gerrit Fremouw of the Department of Health, Education and Welfare)

(commenting that it would be economically feasible to make all Social Security district offices and health and education facilities "100% barrier free.").

**18.** Section 4156 gives the Postal Service, as well as the Administrator of General Services, the Secretary of Housing and Urban Development, and the Secretary of Defense, the authority, on a case-by-case basis, to modify or waive any standard as it applies to a covered building when such modification or waiver is "clearly necessary." This waiver provision gives each of the agencies, including the Postal Service, flexibility in applying the standards used and developed pursuant to the Barriers Act. Section 4156 serves to implement the "whenever possible" language of §§ 4152–4154a.

**19.** The Postal Service argues that plaintiffs lack standing under section 504 of the Rehabilitation Act. This circuit has held that such standing does exist. *See Williams v. United States,* 704 F.2d 1162 (9th Cir.1983). *See also supra* note 1.

**20.** Section 501(b) provides:

> (b) Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch shall, within one hundred and eighty days after September 26, 1973, submit to the Civil Service Commission and to the Committee an affirmative action program plan for the hiring, placement, and advancement of handicapped individuals in such department, agency, or instrumentality. Such plan shall include a description of the extent to which and methods whereby the special needs of handicapped employees are being met. Such plan shall be updated annu-

qualified handicapped individuals under any program or activity conducted by the Postal Service.[21] Section 504 requires structural changes to provide access to federal programs if no less costly solution is possible.[22]

The thrust of the Rehabilitation Act is to require access for handicapped persons to employment and federal programs. To meet the requirements of the Rehabilitation Act, the same structural modifications that are mandated under the Barriers Act might be necessary under the Rehabilitation Act. In certain instances alterations *not* required by the Barriers Act (alterations to a building under a pre-1977 lease, for example) might be required to provide access for handicapped employees or to provide access to federal programs. On the other hand, if alternate arrangements satisfying the Rehabilitation Act were made, such alterations might not be required.[23] In other words, whether or not structural changes in Postal facilities are required under the Rehabilitation Act depends on whether the mandates of the Rehabilitation Act can be carried out without structural modifications to provide access.

Because this case was dismissed at the pleadings stage, we cannot determine whether plaintiffs could prevail on their claims under the Rehabilitation Act as to buildings that are not currently subject to alteration under the Barriers Act. Similarly, until the facts have been developed through discovery or trial, plaintiffs' claims that the Postal Service is discriminating against handicapped persons in employment through the maintenance of inaccessible buildings and by failure to implement an adequate affirmative action program cannot be judged.[24]

### III. Attorneys' Fees.

Plaintiffs request attorneys' fees under the Equal Access to Justice Act, 28

ally, and shall be reviewed annually and approved by the Commission, if the Commission determines, after consultation with the committee, that such plan provides sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for handicapped individuals.

21. Section 504 provides, in relevant part,

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under ... any program or activity conducted by any Executive agency or by the United States Postal Service....

22. *See, e.g.,* Nondiscrimination on Basis of Handicap, 42 Fed.Reg. 22676, 22689 (1977). ("Accessibility to the recipient's program or activity may be achieved by a number of means.... Structural changes in existing facilities are required only where there is no other feasible way to make the recipient's program accessible."). Pursuant to Executive Order 11914, HEW issued government-wide rules for the enforcement of § 504. *See* Implementation of Executive Order 11914, 43 Fed.Reg. 2132, 2135 (1978). *Cf. Oversight Hearing on the Architectural and Transportation Barriers Compliance Board: Before the Subcommittee on Select Education of the House Committee on Education and Labor,* 96th Cong., 2d Sess. 122 (1980) (Statement of Drew Days, Assistant Attorney General for Civil Rights, Department of Justice, noting the overlap between § 504 and the requirements of the Barriers Act).

23. The Supreme Court's opinion in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), does not suggest otherwise, as the Postal Service argues. In *Davis,* the Court concluded that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406, 99 S.Ct. at 2367. There, the Court has found that Davis was not an "otherwise qualified" handicapped individual under section 504. Here, there is no question that the disabled plaintiffs are "qualified" to receive the benefits of Postal Service programs—no special qualifications exist for purchasing postage stamps or mailing letters. *Davis* holds only that § 504 does not compel substantial modifications in existing education programs to permit the participation of the handicapped. It does not define the scope of § 504 in contexts in which the handicapped are admittedly "qualified" to participate.

24. In light of the dispositions by the district court and this court, we need not reach the plaintiffs' Equal Protection claim.

U.S.C. § 2412(b). This requires a ruling from the district court in the first instance. *See Timms v. United States,* 742 F.2d 489 (9th Cir.1984).

We REVERSE and REMAND to the district court for further proceedings consistent with this opinion.