KRAATZ & CRAIG SURVEYING INC., PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26152–08.　　　　Filed April 13, 2010.

P's only activity is land surveying in Tennessee. P does not employ any licensed engineers, is not associated with any firm that employs licensed engineers, and does not provide any services that State law requires to be performed only by a licensed engineer. Pursuant to sec. 1.448–1T(e)(4)(i), Temporary Income Tax Regs., 52 Fed. Reg. 22768 (June 16, 1987) (the temporary regulation), engineering includes surveying and mapping. R determined that P's land surveying constitutes the performance of services in the field of engineering pursuant to the temporary regulation and that, therefore, P is a qualified personal service corporation as defined in sec.

167

448(d)(2), I.R.C., subject to a flat 35-percent income tax rate under sec. 11(b)(2), I.R.C. P asserts that the temporary regulation is invalid or, if valid, means that surveying and mapping services, if performed by an engineer, would qualify as services in the qualifying field of engineering and does not apply in P's situation. P asserts, citing *Grutman-Mazler Engg. Inc. v. Commissioner*, T.C. Memo. 2008–140, and *Alron Engg. & Testing Corp. v. Commissioner*, T.C. Memo. 2000–335, that the Court should look to State law to decide whether surveying is in the field of engineering. P contends that land surveying in Tennessee can be performed only by a licensed land surveyor and that P is not licensed to perform any activity which State law requires to be performed by a licensed engineer.

1. *Held*: Whether a service is performed in a qualifying field under sec. 448(d)(2), I.R.C., is to be decided by examining all relevant indicia and is not controlled by State licensing laws. See *Rainbow Tax Serv., Inc. v. Commissioner*, 128 T.C. 42, 46–47 (2007).

2. *Held*, *further*, the temporary regulation is supported by the legislative history, by the ordinary meaning of the term "civil engineering", which encompasses surveying, Webster's Third New International Dictionary 413 (2002), and by other indicia that surveying is regarded as within the field of engineering; it is valid under *Natl. Muffler Dealers Association v. United States*, 440 U.S. 472 (1979) (it implements the congressional mandate in a reasonable manner), and under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984) (it is not arbitrary, capricious, or manifestly contrary to the statute).

3. *Held*, *further*, P's land surveying is a service performed in the field of engineering under sec. 448(d)(2), I.R.C., and P is subject to the flat 35-percent income tax rate under sec. 11(b)(2), I.R.C.

*Maurice W. Gerard*, for petitioner.
*Caroline R. Krivacka*, for respondent.

OPINION

DAWSON, *Judge*: Respondent determined a deficiency of $9,762 in petitioner's Federal income tax for its tax year ending December 31, 2005. In the notice of deficiency, respondent determined that petitioner is a qualified personal service corporation under section 448 subject to a flat 35-percent income tax rate under section 11(b)(2). [1] Whether peti-

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for 2005, and Rule references are to the Tax Court Rules of Practice and Procedure.

tioner is a qualified personal service corporation depends upon whether petitioner's sole activity of land surveying constitutes the performance of services in the field of engineering for purposes of section 448.

## Background

This case was submitted fully stipulated under Rule 122, and the stipulated facts are incorporated as our findings by this reference.[2]

Petitioner was incorporated under the laws of the State of Tennessee. Its principal place of business is Seymour, Tennessee. Petitioner timely filed Form 1120, U.S. Corporation Income Tax Return, for 2005, reporting taxable income of $48,808 and tax of $7,321.

Petitioner is in the business of surveying land, and land surveying is the only service petitioner provides. Petitioner does not have any employees who are licensed engineers, is not associated with any firm that employs licensed engineers, and does not provide any services that State law requires to be performed only by a licensed engineer.

## Discussion

### I.  *Applicable Sections of the Internal Revenue Code and Regulations*

Section 11(a) imposes a tax on the taxable income of every corporation. Although for Federal income tax purposes corporations generally are taxed at graduated income tax rates under section 11(b)(1), qualified personal service corporations as defined in section 448(d)(2) are taxed at a flat 35-percent income tax rate. Sec. 11(b)(2).

A qualified personal service corporation is any corporation that satisfies a function test and an ownership test. Sec. 448(d)(2). Petitioner argues that it is not a qualified personal service corporation because it does not meet the function test.[3]

---

[2] Respondent previously filed a motion for summary judgment pursuant to Rule 121. The parties' submission of the case fully stipulated renders that motion moot.

[3] Petitioner has not asserted that it does not satisfy the ownership test and is deemed, therefore, to have conceded that the ownership test is satisfied if its land surveying is in the field of engineering.

The function test requires that substantially all of the corporation's activities involve the performance of services in the fields of "health, law, engineering, architecture, accounting, actuarial science, performing arts, or consulting" (qualifying field). Sec. 448(d)(2)(A). Section 1.448–1T(e)(4)(i), Temporary Income Tax Regs., 52 Fed. Reg. 22768 (June 16, 1987) (sometimes the temporary regulation), provides:

> (4) Function test.—(i) In general.—A corporation meets the function test if substantially all the corporation's activities for a taxable year involve the performance of services in one or more of the following fields—
>
> (A) Health,
> (B) Law,
> (C) Engineering (including surveying and mapping),
> (D) Architecture,
> (E) Accounting,
> (F) Actuarial science,
> (G) Performing arts, or
> (H) Consulting.
>
> Substantially all of the activities of a corporation are involved in the performance of services in any field described in the preceding sentence (a qualifying field), only if 95 percent or more of the time spent by employees of the corporation, serving in their capacity as such, is devoted to the performance of services in a qualifying field. For purposes of determining whether this 95 percent test is satisfied, the performance of any activity incident to the actual performance of services in a qualifying field is considered the performance of services in that field. Activities incident to the performance of services in a qualifying field include the supervision of employees engaged in directly providing services to clients, and the performance of administrative and support services incident to such activities.

## II. *Positions of the Parties*

Respondent determined that petitioner's land surveying constitutes the performance of services in the field of engineering pursuant to section 1.448–1T(e)(4)(i), Temporary Income Tax Regs., *supra*. Respondent asserts that the regulation is supported by the legislative history and reflects the congressional intent.

Petitioner asserts that the temporary regulation as interpreted and applied by respondent is invalid in that it expands the meaning of engineering beyond the ordinary meaning and brings into the definition of engineering the entirely separate profession of land surveying. Citing *Grutman-Mazler Engg. Inc. v. Commissioner*, T.C. Memo.

2008–140, and *Alron Engg. & Testing Corp. v. Commissioner*, T.C. Memo. 2000–335, petitioner asserts that the Court should look to State law to determine whether an activity is the performance of a service "in the field of engineering". Petitioner asserts that its land surveying is not performed in the field of engineering because the activities of engineering and land surveying are separately licensed and administered under Tennessee law. For completeness, we briefly summarize the relevant State law provisions.

III.  *Tennessee Registration Requirements for Engineers and Land Surveyors*

It is unlawful for any person to practice either land surveying or engineering in Tennessee unless the person has been duly registered or is exempted from registration under Tennessee law. Tenn. Code Ann. secs. 62–18–101(b), 62–2–101 (2009). Land surveying and engineering require separate registration and are governed by separate boards and statutes.

The practice of land surveying is governed by Tenn. Code Ann. secs. 62–18–101 to 62–18–127 (2009) and regulated by the State Board of Examiners for Land Surveyors. The practice of engineering is governed by the applicable provisions of Tenn. Code Ann. secs. 62–2–101 to 62–2–406, 62–2–601, and 62–2–602 (2009) and regulated by the State Board of Examiners for Architects and Engineers.

A person who has not practiced surveying for at least 10 years and who wishes to practice land surveying in Tennessee must pass the fundamentals of land surveying examination prepared by the National Council of Examiners for Engineering and Surveying (NCEES). Tenn. Code Ann. sec. 62–18–109. A person wishing to practice engineering in Tennessee must pass two examinations prepared by NCEES—the fundamentals of engineering examination (not required with undergraduate engineering degree and 12 or more years of progressive engineering experience) and the principles and practice of engineering examination. [4] *Id.* secs. 62–2–401, 62–2–402, 62–2–405.

---

[4] The NCEES prepares separate fundamentals of engineering exams for the seven major engineering disciplines (chemical, civil, electrical, environmental, industrial, mechanical, and other disciplines); two-thirds of the questions cover all disciplines (breadth part) and one-third covers
Continued

Tennessee statutes and regulations do not define the practice of engineering. However, Tenn. Code Ann. sec. 62–18–102(3) defines the "Practice of land surveying" as follows:

"Practice of land surveying" means any service of work, the adequate performance of which involves the application of special knowledge of the principles of mathematics, the related physical and applied sciences and the relevant requirements of law for adequate evidence to the act of measuring and locating lines, angles, elevations, natural and man-made features in the air, on the surface of the earth, within underground workings and on the beds of bodies of water for the purpose of determining areas and volumes, for the monumenting of property boundaries and for the platting and layout of lands and subdivisions of land, including the topography, drainage, alignment and grades of streets, and for the preparation and perpetuation of maps, records, plats, field notes, records and property descriptions that represent these surveys * * *

There is some overlap between the functions of a licensed engineer and those of a licensed land surveyor; e.g., either a registered engineer or a registered land surveyor may prepare a detailed topographic map to accompany an application for a coal surface mining operations permit pursuant to Tenn. Code Ann. sec. 59–8–407 (2002). The Tennessee State Board of Examiners for Architects and Engineers has adopted the following delineation of engineering and surveying:

1. Land surveying, measurement and calculation of areas, boundaries, property lines, the subdivision of property and the plotting thereof must be done by a surveyor and his drawing must bear his seal.

2. Subdivision road alignment, road grades, cutting and filling of subdivision lots, and changes to the topography which involves a final grading plan may be performed by either an engineer or a surveyor; the designer's seal must be applied to the drawing. In localities where instability of final grades and slopes requires analysis of soils to prevent conditions hazardous to life and property, design of roads, slopes, ditches, and building sites must be done by an engineer.

3. Culverts, storm drainage pipes, water lines, sewer lines, electric power lines or other utilities not existing prior to development shall not be shown

the specific discipline (depth part). Eleven percent of the questions in the depth part of the fundamentals of engineering examination for civil engineering are questions on surveying.

NCEES prepares separate principles and practice of engineering examinations in 25 engineering disciplines or subdisciplines. The civil engineering exam covers five subdisciplines–construction, geotechnical, structural, transportation, and water resources and environmental—and consists of a breadth part and a depth part. The breadth part contains questions from all five subdisciplines of civil engineering. The depth exams focus more closely on a single subdiscipline of civil engineering.

on a subdivision drawing unless that drawing bears the seal of the engineer who designed them.

4. The issue of whether or not the design of storm water drainage systems may be conducted by a licensed land surveyor was addressed in an opinion by the Attorney General's Office on February 9, 2004 (Opinion No. 04–018). That Opinion answers the question: "Does the statute (Tenn. Code Ann. §62–18–102(3), defining the "practice of land surveying") allow land surveyors to conduct and perform drainage design and calculations required for the construction of subdivisions, including determining the detention and retention of storm water as well as determining the size of ponds, basins, pipes and culverts which hold and through which storm water will flow?" The Opinion concludes, based on its analysis and past authorities, that a licensed land surveyor *who is not a registered engineer* may not conduct drainage design and calculations of this kind. * * *

[Tennessee State Board of Architectural and Engineering Examiners, Reference Manual for Building Officials and Design Professionals, app. H, Design and Practice Policies, IV. Delineation of Engineering and Surveying (Adopted Jan. 26, 1990; rev. and adopted Oct. 4, 1997; rev. and adopted July 10, 2008).]

## IV.  *Caselaw*

Petitioner asserts that because land surveying in Tennessee cannot be performed by a licensed engineer who is not also a licensed land surveyor, land surveying in Tennessee is not in the field of engineering. Petitioner concludes that, consistent with *Grutman-Mazler Engg. Inc. v. Commissioner*, T.C. Memo. 2008–140, and *Alron Engg. & Testing Corp. v. Commissioner*, T.C. Memo. 2000–335, its land surveying is not in the field of engineering. But cf. *Rainbow Tax Serv., Inc. v. Commissioner*, 128 T.C. 42, 47 (2007) (whether services were within the field of accounting under section 448(d)(2) not controlled by State licensing laws).

In *Alron Engg. & Testing Corp. v. Commissioner*, *supra*, the taxpayer, a Wisconsin corporation, performed both engineering services and geotechnical testing services. At issue was whether the geotechnical testing was within the field of engineering under section 448(d)(2). We observed that under Wisconsin law an engineer licensed with the State must meet certain minimum education, experience, and examining board requirements but that there are no standard minimum requirements for technicians who perform geotechnical testing services under the laws of Wisconsin. We concluded that geotechnical testing did not

require the same education, training, and mastery as engineering and held that it did not constitute engineering.

In *Rainbow Tax Serv., Inc. v. Commissioner*, *supra*, we held that tax return preparation and bookkeeping services provided by a Nevada corporation were within the qualifying field of accounting under section 448(d)(2). In that case, although we examined State law, we noted that section 448(d)(2) requires only that the services be in the "field of accounting" and is not limited to public accounting. *Id.* at 46. We declined to limit services performed in the field of accounting to those requiring State licensure. Rather, we applied the regulations promulgated under section 448 and the ordinary meaning of the words "accounting" and "bookkeeping" (defined as a branch of accounting), noted that under Nevada law "public accounting" includes "the preparation of tax returns", and considered that the "field of accounting" historically included tax return preparation and bookkeeping services. *Id.* at 46–47. Thus, although neither tax return preparation nor bookkeeping requires the same education, training, and mastery as accounting, we held that those activities were services in the field of accounting. Cf. *Alron Engg. & Testing Corp. v. Commissioner*, *supra*.

In *Alron Engg. & Testing Corp.* we looked primarily to State law in holding that geotechnical testing was not in the field of engineering. We did not consider other indicia that might indicate that geotechnical engineering is a branch of civil engineering that historically includes geotechnical testing.[5] See *supra* note 4. However, *Rainbow Tax Serv., Inc.* instructs us to consider other indicia in deciding whether a service is performed in a qualifying field under section 448(d)(2). We shall do so here in deciding whether section 1.448–1T(e)(4)(i), Temporary Income Tax Regs., *supra*, properly includes surveying in the field of engineering for purposes of section 448(d)(2).

---

[5] The NCEES principles and practice of engineering breadth examination for civil engineering includes questions on material testing (e.g., concrete, soil, asphalt) and subsurface exploration and sampling (soil classification and boring log interpretation). The depth exam for geotechnical civil engineering includes questions on subsurface exploration and sampling, covering drilling and sampling procedures, soil classification, general rock characterization, boring log interpretation, and in situ testing.

## V.   *"Field of Engineering"*

When a court reviews an agency's construction of the statute which it administers, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843 (1984). A regulation adopting a "permissible construction" of a statute is due deference "if the statute is silent or ambiguous with respect to the specific issue". *Id.* at 843; see also *Bingler v. Johnson*, 394 U.S. 741, 751 (1969) (regulation was valid where definitions of terms in the regulation "[comported] with the ordinary understanding of" the terms). Thus, we first must decide whether the temporary regulation's inclusion of surveying in the field of engineering is a permissible construction of section 448(d)(2).

The words of a statute should be given their normal meaning and effect in the absence of a showing that some other meaning was intended. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). If the intent of Congress is clearly and unambiguously expressed by the statutory language at issue, the Court must apply the statute according to its terms. *Zuni Pub. Sch. Dist. No. 89 v. Dept. of Educ.*, 550 U.S. 81, 93–94 (2007) ("normally neither the legislative history nor the reasonableness of the Secretary's method would be determinative if the plain language of the statute unambiguously indicated that Congress sought to foreclose the Secretary's interpretation").

Section 448 lists eight qualifying fields but does not define any of them. When interpreting the text of a statute, courts frequently begin by looking to the common and ordinary meaning of a word set forth in a dictionary. See, e.g., *Carcieri v. Salazar*, 555 U.S. ___, ___, 129 S. Ct. 1058, 1063–1064 (2009); *Rousey v. Jacoway*, 544 U.S. 320, 326 (2005); *Carlson v. Commissioner*, 116 T.C. 87, 94 (2001). However, analyses of the legislative history and purpose of a statute are also traditional tools of statutory construction. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,*

*supra* at 843 n.9. We begin our analysis with the legislative history because it provides evidence of congressional intent with respect to the precise point at issue. See *Zuni Pub. Sch. Dist. No. 89 v. Dept. of Educ.*, *supra* at 105–106 (Stevens, J., concurring).

A.  *Legislative History and Purpose*

Congress enacted section 448, which generally prohibits C corporations, partnerships that have a C corporation as a partner, and tax shelters from using the cash method of accounting, as part of the Tax Reform Act of 1986, Pub. L. 99–514, sec. 801, 100 Stat. 2345. Before the enactment of section 448, taxpayers whose businesses did not involve inventories generally could elect to use any method of accounting that clearly reflected income and that was regularly used in keeping the taxpayer's books and records under section 446. Congress enacted section 448(a) because it believed "that the cash method of accounting frequently fails to reflect accurately the economic results of a taxpayers's trade or business over a taxable year." H. Rept. 99–426, at 605 (1985), 1986–3 C.B. (Vol. 2) 1, 605. However, Congress recognized that the simplicity of the cash method justified its continued use by certain types of taxpayers and for certain types of activities. *Id.* Congress recognized that individuals, especially those engaged in professional activities, personal service corporations, and entities where the income is taxed at the individual level (such as partnerships and S corporations) traditionally had used the cash method of accounting in the operation of their trades or businesses and should be able to continue to use that method. *Id.* Thus, in section 448(b) Congress provided exceptions to section 448(a), including the exception for qualified personal service corporations defined in section 448(d)(2).

The conference report on the Tax Reform Act of 1986, Pub. L. 99–514, sec. 801, 100 Stat. 2345, states:

A qualified personal service corporation is a corporation that meets both a function test and an ownership test. The function test is met if substantially all the activities of the corporation are the performance of services in the field of health, law, engineering (*including surveying and mapping*), architecture, accounting, actuarial science, performing arts or consulting. [H. Conf. Rept. 99–841 (Vol. II), at II–285 (1986), 1986–3 C.B. (Vol. 4) 1, 285; emphasis added.]

The conference report shows that Congress intended surveying and mapping to be treated as services performed in the field of engineering for purposes of the function test.[6] The temporary regulation reflects that intent.

B.   *Definitions of Engineering and Civil Engineering*

Webster's Third New International Dictionary 752 (1993) defines "engineering" as:

the science by which the properties of matter and the sources of energy in nature are made useful to man in structures, machines and products— *see* chemical engineering, civil engineering, electrical engineering, hydraulic engineering, industrial engineering, mechanical engineering, municipal engineering, sanitary engineering[.]

The field of engineering includes any branch of engineering. See *Rainbow Tax Serv., Inc. v. Commissioner*, 128 T.C. at 47 (the field of accounting includes bookkeeping, defined in Webster's Third New International Dictionary (1981) as a "branch" of accounting).

Webster's Third New International Dictionary 413 (2002) defines "civil engineering" as "a branch of engineering concerned primarily with public works (as *land surveying*, the building of highways, bridges, waterways, or harbors * * *) but also embracing private enterprises (as railroad and airport building, private building construction, and farm drainage)". (Emphasis added.) Thus, land surveying is within the ordinary meaning of engineering.

C.   *Other Indicia*

"The traditional concept of civil engineering is the integrated practice of engineering embracing a number of related specialty areas including, but not limited to, construction, transportation, structures, water resources and environmental, and geotechnical engineering." American Society of

---

[6] The year after the enactment of sec. 448, in the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100–203, sec. 10224, 101 Stat. 1330–412, Congress amended sec. 11(b), making qualified personal service corporations defined in sec. 448(d)(2) ineligible for the graduated income tax rates contained in sec. 11(b)(1) and imposing tax on them at the highest rate (34 percent at that time). The House Ways and Means Committee explained:

The personal service income of corporations owned by its employees is taxed to the employee-owners at the individual graduated rates as it is paid out as salary. The committee believes that it is inappropriate to allow the retained earnings to be taxed at the lower corporate graduated rates. [H. Rept. 100–391 (Part 2), at 1097 (1987).]

Civil Engineers (ASCE) Policy Statement 432 (first approved 1994, adopted May 2, 2008). [7]

ASCE recently adopted Policy Statement 333 (adopted April 24, 2007) in response to "some confusion with respect to the role of civil engineers in the practice of surveying" and the "lack of understanding on the part of certain engineering disciplines, other than civil, of the importance of surveying to the practice of civil, aeronautical, mechanical, and mining engineering, among others." *Id.* Policy Statement 333 defines "Engineering surveying" as follows:

*Policy*

Engineering surveying is defined as those activities involved in the planning and execution of surveys for the location, design, construction, operation, and maintenance of civil and other engineered projects.

Such activities include:

The preparation of survey and related mapping specifications;

Execution of photogrammetric and field surveys for the collection of required data, including topographic and hydrographic data;

Calculation, reduction and plotting of survey data for use in engineering design;

Design and provision of horizontal and vertical control survey networks;

Provision of line and grade and other layout work for construction and mining activities;

Execution and certification of quality control spatial measurements during construction;

Monitoring of ground and structural stability, including alignment observations, settlement levels, and related reports and certifications;

Measurement of material and other quantities for inventory, economic assessment and cost accounting purposes;

Execution of as built surveys and preparation of related maps and plans and profiles upon completion of construction; and

Analysis of errors and tolerances associated with the measurement, field layout and mapping or other plots of survey measurement required in support of engineering projects.

Engineering surveying may be regarded as a specialty within the broader professional practice of engineering and, with the exception of boundary, right of way, or other cadastral[8] surveying, includes all sur-

---

[7] The American Society of Civil Engineers, founded in 1852, is America's oldest national engineering society, representing more than 147,000 members of the civil engineering profession worldwide. See http://www.asce.org/inside/.

[8] Webster's Third New International Dictionary 311 (2002) defines "cadastral" as "1: of or relating to the records of a cadastre: concerned with assembling or keeping the records necessary to the cadastre 2 *of a map or survey*: showing or recording property boundaries, subdivision

veying and mapping activities required to support the sound conception, planning, design, construction, maintenance and operation of engineered projects. Engineering surveying does not include surveys for the retracement of existing land ownership boundaries or the creation of new boundaries.

*    *    *    *    *    *    *

*Rationale*

Engineering surveying is one of the necessary skills of a civil engineer. A civil engineer may specialize in engineering surveying, thereby developing the necessary expertise in the execution and analysis of measurements to the highest level practicable. The engineering surveyor, as a specialist, supports and serves other civil engineers in their task of designing and constructing manmade works for the benefit of mankind. While a civil engineer may not engage full time in engineering surveying and may not be considered an expert on all aspects of engineering surveying, they must be well qualified to perform those aspects of surveying relevant to their professional activities.

Preparation of a detailed topographic map to accompany an application for a coal surface mining operations permit and subdivision road alignment, road grades, cutting and filling of subdivision lots, and changes to the topography which involves a final grading plan falls within the ASCE definition of surveying engineering. In Tennessee those activities may be performed by a licensed land surveyor as well as a licensed engineer.

ASCE publishes various journals that provide technical information for the civil engineering profession, including the Journal of Surveying Engineering. An article on the history of engineering surveying by William E. Kreisle published in the Journal of Surveying Engineering traces the development of the engineering surveyor, his equipment, and his methods. Kreisle, "History of Engineering Surveying", 114 J. Surv. Engg. 102–124 (1988). In the abstract of the article, Kreisle observes that "The engineering surveyor, who evolved from the land surveyor, was the forerunner of all civil engineers, including the founders of the American Society of Civil Engineers." *Id.* at 102.

---

lines, buildings, and other details"; Black's Law Dictionary 195 (8th ed. 1999) defines "cadastre" (also spelled "cadaster") as "A survey and valuation of real estate in a county or region compiled for tax purposes."

D.  *State Licensing Laws Not Controlling*

The inclusion of surveying in the field of engineering is supported by the legislative history. Civil engineering is a branch of engineering, and land surveying falls within the ordinary meaning of engineering and historically is regarded as within the field of engineering. The fact that land surveying may be performed by an individual who is not a licensed engineer does not remove those services from the "field of engineering". See *Rainbow Tax Serv., Inc. v. Commissioner*, 128 T.C. at 46 (tax preparation and bookkeeping services are within the field of accounting even when performed by a corporation that employs no licensed C.P.A.'s).

"The meaning of the words or the legal status of circumstances for federal tax purposes need not be identical to their meaning or their legal effect under state law." *Estate of Steffke v. Commissioner*, 538 F.2d 730, 732 (7th Cir. 1976) (citing *Commissioner v. Tower*, 327 U.S. 280 (1946), and *Lyeth v. Hoey*, 305 U.S. 188 (1938). In interpreting a Federal taxing statute the Supreme Court said:

> Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation. * * * State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. * * *

*Burnet v. Harmel*, 287 U.S. 103, 110 (1932); see also *United States v. Pelzer*, 312 U.S. 399, 402–403 (1941); *Lyeth v. Hoey*, *supra* at 194. Thus, the provisions of the revenue laws " 'are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law.'" *United States v. Irvine*, 511 U.S. 224, 239 (1994) (quoting *United States v. Pelzer*, *supra* at 402–403).

We can find no basis in the text of section 448(d)(2) or its legislative history to conclude that Congress intended to condition the meaning of "services in the field of engineering" (or any other qualifying field) on State law. In *NLRB v.*

*Hearst Publns., Inc.*, 322 U.S. 111, 123 (1944), the Supreme Court rejected an argument that the term "employee" as used in a Federal statute should be defined by State law, explaining:

> Both the terms and the purposes of the statute, as well as the legislative history, show that Congress had in mind no * * * patchwork plan * * *. * * * Nothing in the statute's background, history, terms or purposes indicates its scope is to be limited by * * * varying local conceptions, either statutory or judicial, or that it is to be administered in accordance with whatever different standards the respective states may see fit to adopt for the disposition of unrelated, local problems. * * *

Similarly, nothing in the backgrounds, histories, terms, or purposes of sections 11(b)(2) and 448(d)(2) indicates that they are to be administered in accordance with different licensing standards States may adopt. Because State licensing laws governing engineering (and other qualifying fields) differ from State to State, defining a qualifying field by State licensing laws would mean that conduct in one State might constitute the performance of services in a qualifying field, whereas identical conduct in a neighboring State would not. "Congress has given no indication it intended the criminality of official conduct under federal law to depend on geography." *United States v. Weyhrauch*, 548 F.3d 1237, 1246 (9th Cir. 2008).

Whether a service is performed in one of the qualifying fields under section 448(d)(2) is to be decided by all relevant indicia, including the text of the statute, its legislative history and regulations, application of the normal meaning of the term "health", "law", "engineering", "architecture", "accounting", "actuarial science", "performing arts", or "consulting", and examination of services historically regarded as within the qualifying field. See *Rainbow Tax Serv., Inc. v. Commissioner*, 128 T.C. 42 (2007).

VI. *Conclusion*

We hold that section 1.448–1T(e)(4)(i), Temporary Income Tax Regs., *supra*, is a reasonable interpretation of the statute, supported by the legislative history; by the ordinary meaning of the word "engineering", which encompasses surveying; and by other indicia, that surveying is regarded as within the field of engineering. It implements the congres-

sional mandate in a reasonable manner and is not arbitrary, capricious, or manifestly contrary to the statute. Accordingly, it is valid under both *Natl. Muffler Dealers Association v. United States*, 440 U.S. 472 (1979), and *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).[9] We hold further that petitioner's land surveying is within the field of civil engineering, which in turn is within the field of engineering, and that petitioner is a qualified personal service corporation defined in section 448(d)(2) and subject to the flat 35-percent income tax rate under section 11(b)(2).

To reflect the foregoing,

> *An appropriate order and decision for respondent will be entered.*

---

[9] Under *Natl. Muffler Dealers Association v. United States*, 440 U.S. 472 (1979), an interpretative regulation is valid if it implements a congressional mandate in a reasonable manner. By contrast, under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984), a legislative regulation is upheld "unless arbitrary, capricious, or manifestly contrary to the statute".