# United States Tax Court

160 T.C. No. 4

SYDNEY ANN CHANEY THOMAS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12982-20.                                   Filed February 13, 2023.

————

P and her spouse H filed joint federal income tax returns for 2012, 2013, and 2014, but did not pay the full amounts of tax shown on those returns. After H's death, P sought relief from joint and several liability pursuant to I.R.C. § 6015(f). R denied P's request, and P petitioned our Court seeking a determination under I.R.C. § 6015(e).

At trial, R proposed to introduce into evidence certain posts from P's personal blog that are relevant to the ultimate disposition of this case. The posts were not part of the administrative record; R learned of them only after P filed her Petition. P objected to the admission of the posts. The Court took P's objection under advisement and, by subsequent Order, admitted the blog posts in full without prejudice to either party's ability to file a motion to strike.

After trial, P filed a Motion to Strike the blog posts that predated R's denial of P's request, on the ground that they were not "newly discovered or previously unavailable evidence" as contemplated by I.R.C. § 6015(e)(7)(B). R opposed the Motion arguing that the blog posts are in fact "newly discovered" and "previously unavailable evidence" under I.R.C. § 6015(e)(7)(B).

**Served 02/13/23**

*Held*: The posts from P's personal blog are "newly discovered" evidence within the meaning of I.R.C. § 6015(e)(7)(B) and as such were properly admitted.

*Held, further*, P's Motion will be denied.

————————

*Megan L. Brackney*, for petitioner.

*Julie V. Skeen* and *Sharon Ortega*, for respondent.

OPINION

TORO, *Judge*: This case arises under section 6015.[1] Now before the Court is petitioner Sydney Ann Chaney Thomas's Motion to Strike portions of an Exhibit the Commissioner of Internal Revenue offered at trial. The Motion requires us to confront an issue of first impression concerning the meaning of section 6015(e)(7). After considering the text, structure, and history of section 6015(e)(7), we will deny the Motion.

*Background*

The following facts are derived from the parties' pleadings and Motion papers and relevant Exhibits. They are stated solely for the purpose of ruling on the Motion before us and not as findings of fact in this case. *See Rowen v. Commissioner*, 156 T.C. 101, 103 (2021).

Ms. Thomas and her husband, Tracy A. Thomas, filed joint federal income tax returns for the years 2012, 2013, and 2014. Some of the tax shown as due on those returns remains unpaid.

Mr. Thomas died in 2016. After his death, Ms. Thomas asked the Internal Revenue Service for relief from the unpaid joint and several liabilities for 2012, 2013, and 2014 pursuant to section 6015(f). The IRS denied that request on September 8, 2020. On November 9, 2020, Ms. Thomas petitioned our Court pursuant to section 6015(e) to

—————————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times.

determine the appropriate relief available to her under section 6015(f). Ms. Thomas resided in California when she filed her Petition.

Because both parties wanted the Court to consider testimony and other evidence that was not part of the administrative record, we tried the case in San Francisco on April 4, 2022. At the trial, the Commissioner proposed to introduce into evidence Exhibit 13–R, consisting of a series of posts from Ms. Thomas's personal blog. The first post included in the Exhibit is dated November 2, 2016, and the final post is dated January 5, 2022. The contents of the posts are relevant because they reflect information about Ms. Thomas's assets, lifestyle, and business, as well as her relationship with Mr. Thomas. *See* Fed. R. Evid. 401. Ms. Thomas discussed the blog during her direct testimony, and, although the Commissioner did not directly question Ms. Thomas about specific blog posts during cross-examination, some of the Commissioner's cross-examination questions relied on matters addressed in the blog posts.

Ms. Thomas, who represented herself during the trial, expressed some concerns about the admissibility of the blog posts. The Court construed Ms. Thomas's concerns as an objection to admitting Exhibit 13–R and took the issue under advisement.

On April 26, 2022, the Court issued an Order addressing Exhibit 13–R. The Court concluded "that it would advance the orderly resolution of this case to treat [Exhibit 13–R and certain other exhibits with respect to which there is no longer a dispute] as admitted in full," "without prejudice to the parties' ability to file motions to have an exhibit stricken from the record." Order 2. The Court noted that, "given the novelty and complexity of certain issues [relating to the admissibility of Exhibit 13–R and the other exhibits], Ms. Thomas's presentation on these issues may benefit from the assistance of counsel (pro bono or otherwise)." *Id.*

On May 31, 2022, Megan L. Brackney (acting pro bono) entered an appearance for Ms. Thomas. A request to extend the time for responding to the Court's April 26 Order followed the next day. The Court granted an extension. On July 1, 2022, Ms. Thomas filed the Motion to Strike now before us.

On July 25, 2022, the Center for Taxpayer Rights, the Community Tax Law Project, the UC Hastings Low-Income Taxpayer Clinic, and the

Villanova Federal Tax Clinic (collectively, amici) moved for leave to file a brief, which the Court granted.

On September 12, 2022, the Commissioner filed an Objection to the Petitioner's Motion to Strike. On October 12, the Commissioner responded to the amici's brief. Also on October 12, Ms. Thomas replied to the Commissioner's Objection. On November 10, the Commissioner responded to Ms. Thomas's Reply.

*Discussion*

I.      *Relevant Legal Principles*

Married couples may elect to file a joint federal income tax return for a taxable year. I.R.C. § 6013. When they do, their tax for that year is based on their aggregate income and deductions, and their liability for any tax due is joint and several. I.R.C. § 6013(d)(3); *Alt v. Commissioner*, 119 T.C. 306, 311 (2002), *aff'd*, 101 F. App'x 34 (6th Cir. 2004). This means that the Commissioner is free to collect from either spouse the entire amount of tax due for that year, regardless of how much income the particular spouse earned or what that spouse's tax liability would have been if the spouse had filed a separate return reflecting only that spouse's income and deductions.

A spouse who has made a joint return may seek relief from joint and several liability under the procedures established in section 6015. As relevant to this case, subject to certain conditions that need not detain us, section 6015(f) permits the IRS to relieve a requesting spouse of some or all of the outstanding joint liability if, taking into account all of the facts and circumstances, it is inequitable to hold that spouse liable for any unpaid tax. A requesting spouse who is dissatisfied with the IRS's decision about the requested relief "may petition [our Court] . . . to determine the appropriate relief available to the individual under [section 6015]." I.R.C. § 6015(e)(1)(A).

In 2019, Congress amended the statutory provision that governs our determination under section 6015(e) by adding a new paragraph (7). *See* Taxpayer First Act, Pub. L. No. 116-25, § 1203(a)(1), 133 Stat. 981, 988 (2019). That paragraph provides as follows:

> (7) Standard and scope of review.—Any review of a determination made under this section shall be reviewed de novo by the Tax Court and shall be based upon—

> (A) the administrative record established at the time of the determination, and
>
> (B) any additional newly discovered or previously unavailable evidence.

I.R.C. § 6015(e)(7). The Taxpayer First Act, § 1203(b), 133 Stat. at 988, provides that "[t]he amendments made by this section shall apply to petitions or requests filed or pending on or after the date of the enactment of this Act [i.e., July 1, 2019]." *See Sutherland v. Commissioner*, 155 T.C. 95, 104 (2020) (concluding that paragraph (7) applies to petitions filed with the Court on or after July 1, 2019).

Paragraph (7) applies here because Ms. Thomas's Petition was filed on November 9, 2020. Thus, we must review the IRS's determination to deny Ms. Thomas's request for relief de novo "based upon . . . the administrative record established at the time of the determination" and "any additional newly discovered or previously unavailable evidence."[2] I.R.C. § 6015(e)(7).

The parties agree that Ms. Thomas's blog posts are not part of the administrative record and that they are relevant to the disposition of the case. Given their relevance, we must determine whether we should strike the blog posts pursuant to section 6015(e)(7), and therefore we consider for the first time the meaning of the phrase "any additional newly discovered . . . evidence." As we explain below, we conclude that the phrase should be interpreted according to its ordinary meaning and that the blog posts will remain in the record. But first we describe briefly the positions taken by the parties and amici.

II. *Parties' Positions*

A. *Ms. Thomas's Arguments*

Ms. Thomas seeks to strike pages 1–74 and 97–131 of Exhibit 13–R, covering blog posts that existed before September 8, 2020, the date on which the Commissioner denied Ms. Thomas's request for relief. In Ms. Thomas's view, "the pre-September 8, 2020, blog posts were publicly available, and Respondent could have found them through

---

[2] Neither section 6015 nor the regulations thereunder define the administrative record for purposes of an innocent spouse determination. *Cf.* Treas. Reg. § 301.7623-3(e)(1) and (2) (describing the administrative record for a whistleblower determination); Treas. Reg. § 301.6330-1(f)(2), Q&A-F4 (describing the administrative record for a collection due process hearing).

an internet search of Petitioner's name." Pet'r's Mot. to Strike ¶ 15. Thus, they were not "previously unavailable." *Id.* ¶ 16.

Ms. Thomas asks the Court to conclude that the posts are also not "newly discovered." Ms. Thomas observes that the Taxpayer First Act "does not define [the term 'newly discovered'] and the legislative history is silent in this regard." *Id.* ¶ 19. Ms. Thomas contends that the Court should interpret the term by reference to Rule 60(b)(2) of the Federal Rules of Civil Procedure (FRCP 60(b)(2)). That Rule provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" based on "newly discovered evidence *that, with reasonable diligence, could not have been discovered in time* to move for a new trial under Rule 59(b)." FRCP 60(b)(2) (emphasis added).

Ms. Thomas acknowledges that the ordinary meaning of "discovered" is "to obtain sight or knowledge of for the first time," Pet'r's Mot. to Strike ¶ 21, but maintains that

> [a]pplying the ordinary meaning would set a very low bar in determining whether evidence is "newly discovered," as it would allow [the Commissioner] to freely reopen the record and submit any evidence at trial just on a showing that [he] did not previously know about it without any consideration of [the Commissioner's] attempt to obtain the evidence sooner. It is unlikely that this is what Congress intended when enacting the [Taxpayer First Act].

*Id.* ¶ 22.

In Ms. Thomas's view, the standard established by FRCP 60(b)(2) "provides an administrable standard for admitting newly discovered evidence, by requiring a showing that the party seeking admission has exercised reasonable diligence." *Id.* ¶ 23.

Applying this standard, Ms. Thomas contends that the Commissioner did not exercise reasonable diligence here.

B.    *The Commissioner's Arguments*

The Commissioner maintains that none of Exhibit 13–R should be stricken. In his view, all of Ms. Thomas's blog posts were "newly

discovered" by the Commissioner after the administrative proceedings concluded.[3]

The Commissioner urges us to give the term "newly discovered" its ordinary meaning. And the Commissioner contends that he prevails under the ordinary meaning of the phrase because he did not become aware of the blog materials until after Ms. Thomas brought this case.

In the Commissioner's view, several considerations favor his reading of the statute.

First, as the Commissioner sees it, the IRS's role in the administrative review process for resolving claims for relief under section 6015 is that of an arbiter, not an advocate. Thus, the IRS does not have a duty to gather evidence to defeat a request for relief.

Second, because the taxpayer has the burden at the administrative stage to establish that relief is appropriate, if the IRS concludes that the taxpayer has failed to meet that burden, it would be a waste of resources for the IRS to gather additional evidence simply to refute an inadequate claim.

Third, because the relationship between the IRS and a requesting spouse does not become adversarial until a proceeding is instituted in this Court, any responsibility for the IRS to begin collecting additional information should not arise until then.

Fourth, the statutory requirement that our decision be based on the "the administrative record established at the time of the determination," I.R.C. § 6015(e)(7)(A), represents an effort to ensure that requesting spouses exhaust their administrative remedies before coming to our Court. Since no exhaustion requirement applies to the Commissioner, he contends that he should be permitted to look for additional evidence once the case is in court rather than being required to undertake such efforts earlier on pain of losing the right to do so. Moreover, since the evidence at issue here was within the requesting spouse's control, that factor weighs in favor of the evidence being left in

---

[3] The Commissioner further notes that the standard in section 6015(e)(7)(B) is disjunctive and maintains that the blog posts also qualify as "previously unavailable evidence." *See United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021) ("As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately." (quoting *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975))). However, in view of our disposition, we need not address this point further.

the record. Taxpayers, the Commissioner maintains, should not be incentivized to hide information from the IRS during the administrative phase.

The Commissioner also contends that the standard reflected in FRCP 60(b)(2) is inappropriate here for three reasons. First, the text of section 6015(e)(7)(B) is different from the text of FRCP 60(b)(2). Specifically, section 6015(e)(7)(B) does not contain the "additional language qualifying" the type of newly discovered evidence that counts for purposes of the Rule. Resp't's Obj. to Mot. to Strike ¶ 35. According to the Commissioner, adding that concept to the statute would "make a rule out of whole cloth." *Id*. Second, the Commissioner contends that reading "newly discovered" in section 6015(e)(7)(B) to implicitly include a due diligence requirement would render "previously unavailable" (a phrase that does not appear in FRCP 60(b)(2)) superfluous. And third, FRCP 60(b)(2) applies after a trial has taken place and relief is sought from a final judgment, order, or proceeding. In that context, there "may be strong considerations of preserving judicial resources when considering whether new evidence should be considered." Resp't's Obj. to Mot. to Strike ¶ 38. But those considerations are not present here, where the administrative proceedings under review did not involve a trial, the party interested in introducing the evidence did so at the trial before this Court, and the Court would be deciding the matter de novo.

C.     *The Amici's Arguments*

The amici "support . . . the position that exceptions to the administrative record rule of § 6015(e)(7) be applied expansively given the *de novo* review the court must conduct, the requesting spouse's specific circumstances, and the nature of the IRS's administrative procedures." Amicus Br. 2.

On the question whether FRCP 60(b)(2) and the authorities under it should be considered in interpreting section 6015(e)(7), the amici explain that "[w]hile we agree with petitioner that in general the rule may inform the determination of whether 'newly discovered evidence' should be considered in the context of § 6015 cases, the Court should use a more expansive standard than in the case law applying Fed. R. Civ. P. 60(b)(2)." Amicus Br. 13. Their reasoning goes as follows:

> The case law applying and defining the additional factors of Fed. R. Civ. P. 60(b)(2) is not suitably adaptable to govern the case in question because the case law addresses

whether to accept newly discovered evidence to overturn a previous opinion or final decision of the court. Applying this same narrow standard to define "newly discovered evidence" in § 6015(e)(7)(B) would result in its application to the skeletal administrative proceedings of the IRS rather than to prior court proceedings. [T]he IRS's administrative procedures [used] in deciding an innocent spouse case do not afford the same level of procedural rights for litigants as does a court proceeding. Testimony is not taken on the record; there is no ability to subpoena witnesses or documents. The preliminary and final determinations issued by [the Cincinnati Centralized Innocent Spouse Operation ("CCISO")] generally contain only stock language stating the elements considered, without reference to specific deficiencies in the requesting spouse's legal argument or documentation. Taxpayers, particularly *pro se* taxpayers without sufficient legal knowledge of IRS and court processes, may be unaware of what additional documents or information would support their case. Under the IRS's innocent spouse processing procedures, CCISO has no requirement to provide a requesting spouse with documents or information supplied by the non-requesting spouse at the pre-Appeals stage. *See* IRM 25.15.18 (Jan. 15, 2020). To the extent that CCISO relies on information from a non-requesting spouse to deny the requesting spouse's innocent spouse claim, taxpayers may be unaware of the need to submit additional documents to rebut that information.

. . . .

A court proceeding may be the first opportunity for the requesting spouse to learn the complete reason(s) for denial of relief, because the parties are required to exchange documents and information before trial, giving the parties time and notice to supplement their evidence before a trial or hearing. Thus, in the context of a § 6015 determination, a reading of the phrase "newly discovered evidence" to allow submission of additional evidence because the necessity of this evidence is "newly discovered" by the taxpayer during pretrial exchanges would better comport with the Tax Court's obligation to make a *de novo* determination.

*Id.* at 14–16.

The amici also contend that a standard of reasonable diligence should be applied based on a reasonable person standard and that the potential influence of domestic violence in innocent spouse cases warrants special consideration in applying the reasonable diligence standard.

III.   *Analysis*

The Motion before us presents an issue of first impression concerning the meaning of section 6015(e)(7). "As in all statutory construction cases, we begin with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). As the Supreme Court has explained:

> In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). Where . . . that examination yields a clear answer, judges must stop. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999).

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). And, when the statute does not define a term, "we ask what that term's 'ordinary, contemporary, common meaning' was when Congress enacted" the relevant provision. *Id.* at 2362 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

All agree that section 6015 does not define the phrase "newly discovered evidence." We must therefore discern the ordinary meaning of that phrase in 2019.

A.     *Ordinary Meaning of "Newly Discovered"*

To interpret the phrase "newly discovered evidence," we begin by defining the words "newly" and "discovered." *See, e.g., Carcieri v. Salazar*, 555 U.S. 379, 388 (2009) (consulting dictionary definitions to discern a word's ordinary meaning at a given time); *Rousey v. Jacoway*, 544 U.S. 320, 326 (2005) (same); *Kraatz & Craig Surveying Inc. v. Commissioner*, 134 T.C. 167, 177 (2010) (same).

The word "newly" generally is defined to mean "recently" or "lately." *Newly*, *Merriam-Webster*, https://www.merriam-webster.com/ dictionary/newly (last visited Feb. 8, 2023); *Newly*, *Webster's New World College Dictionary* (5th ed. 2016); *see also Newly*, *The American Heritage Dictionary of the English Language* (5th ed. 2016) ("Not long ago; recently"). And as relevant here, the word "discover" generally means "to obtain sight or knowledge of for the first time." *Discover*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/discover (last visited Feb. 8, 2023); *see also Discover*, *Webster's New World College Dictionary* (5th ed. 2016) ("to find out; learn of the existence of; realize"); *Discover*, *The American Heritage Dictionary of the English Language* (5th ed. 2016) ("to notice or learn, especially by making an effort").

No alternative definitions have been provided by the parties, nor do the parties dispute these definitions. We therefore conclude that the ordinary meaning of "newly discovered" as of 2019 was "recently obtained sight or knowledge of for the first time."[4]

---

[4] We do not think Congress intended to use the phrase "newly discovered evidence" in section 6015(e)(7)(B) as a legal term of art. *Black's Law Dictionary* defines "newly discovered evidence" as "[e]vidence existing at the time of a motion or trial but then unknown to a party, who, upon later discovering it, may assert it as grounds for reconsideration or a new trial. *See* Fed. R. Civ. P. 60(b)." *Evidence*, *Black's Law Dictionary* (11th ed. 2019). That definition contemplates judicial proceedings with motions or trials. *See Motion*, *Black's Law Dictionary* (11th ed. 2019) (defining the term "motion" as a "written or oral application requesting a court to make a specified ruling or order"). Administrative proceedings under section 6015 involve neither. Nor is the Commissioner a "party" to (that is, a litigant in) those proceedings, although of course the Commissioner participates in them. *See Party*, *Black's Law Dictionary* (11th ed. 2019) (defining a "party" as "one by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; LITIGANT <a party to the lawsuit>"). Moreover, the structure of section 6015(e)(7) makes plain that the newly discovered evidence the statute addresses is determined by reference to what happened in the administrative proceedings, rather than what happens in the proceedings conducted in this Court. Thus, we do not think Congress used the phrase as a term of art. But, even if we were to translate the legal term of art to the context of section 6015(e)(7)(B) with appropriate modifications, its meaning would be much the same as the phrase's ordinary meaning. Namely, the phrase would refer to evidence existing at the time of the innocent spouse administrative proceeding, but then unknown to a participant in the proceeding, who, upon later discovering it, offers it as evidence in our Court. On the facts before us, this standard would yield the same conclusion we reach by applying the phrase's ordinary meaning.

### B.    *Application to Blog Posts*

Applied to this case, the phrase "newly discovered evidence" encompasses the blog posts that Ms. Thomas seeks to strike.   The Commissioner discovered the posts by searching the internet after Ms. Thomas filed the Petition upon which this case is based.   Resp't's Obj. to Mot. to Strike ¶ 32.   There is no evidence that the Commissioner obtained the blog posts any sooner, and Ms. Thomas makes no argument to that effect.   Therefore, we conclude that pages 1–74 and 97–131 of Exhibit 13–R are admissible as "newly discovered . . . evidence" for purposes of this Court's review of Ms. Thomas's innocent spouse claim.[5]

Ms. Thomas argues that section 6015(e)(7)(B) should be read to incorporate an additional limitation similar to that in FRCP 60(b)(2).   As relevant here, the Rule states that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" on the basis of "newly discovered evidence *that, with reasonable diligence, could not have been discovered in time to move for a new trial*."   FRCP 60(b)(2) (emphasis added).   Ms. Thomas contends that such a limitation would render the blog posts inadmissible because, if the Commissioner had conducted a reasonably diligent search at the time of her administrative proceeding, he could have discovered them.

We do not agree with Ms. Thomas's interpretation of the statute.   As used in FRCP 60(b)(2), the reasonable diligence language qualifies what "newly discovered evidence" courts may review when considering a motion for a new trial.   In other words, the language does not define the phrase "newly discovered evidence" as Ms. Thomas asserts; rather, it acts as an additional (and external) limitation on the meaning of that phrase.

Section 6015(e)(7)(B) contains no such qualifier.   Moreover, FRCP 60(b)(2) was widely known and available as a model when Congress drafted section 6015(e)(7)(B), but Congress chose different language.   Courts generally assume that such drafting choices are intentional.   *See Knight v. Commissioner*, 552 U.S. 181, 188 (2008) ("The fact that [Congress] did not adopt [a] readily available and apparent alternative strongly supports rejecting [a] reading [that relies on the rejected alternative text]."); *see also Loughrin v. United States*, 573 U.S.

---

[5] Our conclusion would be the same if, for example, a requesting spouse were to seek to introduce into evidence posts from a blog that the nonrequesting spouse maintained without the requesting spouse's knowledge and that the requesting spouse discovered after the IRS had made a determination with respect to the request.

351, 358 (2014) ("We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another' . . . this Court 'presume[s]' that Congress intended a difference in meaning." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))); *Grajales v. Commissioner*, 47 F.4th 58, 62 (2d Cir. 2022), *aff'g* 156 T.C. 55 (2021). Here, Congress did not include a reasonable diligence standard in section 6015(e)(7)(B) even though FRCP 60(b)(2) was readily available as a model, and we will respect the omission.

Furthermore, the nearby text in section 6015(e)(7)(B) suggests a conclusion contrary to the one Ms. Thomas urges. Not only does section 6015(e)(7)(B) lack a limiting qualifier; it includes an expanding one, permitting the consideration of "any additional" newly discovered evidence. As the Supreme Court has observed: "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). Thus, even if the phrase "newly discovered evidence" were by itself open to a more limited interpretation (and we do not believe it is), Congress's use of the phrase "any additional" would counsel against adopting a limiting interpretation not presented by the text.

Our reading finds additional support in the structure of section 6015(e)(7), which grants this Court de novo review of innocent spouse determinations.[6] A de novo standard of review suggests that we should construe our authority to consider information outside the administrative record broadly rather than narrowly, because limiting the evidence we can consider inhibits our ability to evaluate a case's merits. *See, e.g.*, *Wilson v. Commissioner*, 705 F.3d at 993 ("The Tax Court must be able to compile a de novo record if it is to consider 'all the facts and circumstances' when deciding whether a taxpayer is entitled to relief from joint liability under § 6015(f) . . . ."). For this reason, in our cases a de novo standard of review typically goes hand-in-hand with a fresh record, *see Ax v. Commissioner*, 146 T.C. 153, 161 (2016) ("The

---

[6] For background on the evolution of the scope and standard of review for cases under section 6015, see *Porter v. Commissioner*, 132 T.C. 203 (2009), and *Wilson v. Commissioner*, 705 F.3d 980, 982 (9th Cir. 2013), *aff'g* T.C. Memo. 2010-134. *See also* H.R. Rep. No. 116-39, pt. 1, at 38–40 (2019) (discussing authorities), *as reprinted in* 2020 U.S.C.C.A.N. 169, 184–86.

In 2019, Congress directly addressed these issues in the Taxpayer First Act, which confirmed generally that a determination under section 6015 "shall be reviewed de novo by the Tax Court." Taxpayer First Act § 1203(a)(1), 133 Stat. at 988 (codified at § 6015(e)(7)).

Internal Revenue Code . . . reflects Congress's intention that the Tax Court will decide deficiency cases not by reviewing the agency's determinations for abuses of discretion but by deciding issues according to the evidence."), while cases where we are limited to the administrative record more commonly are reviewed for abuse of discretion, *Kasper v. Commissioner*, 150 T.C. 8, 20, 22 (2018) (articulating the standard and scope of review for whistleblower cases). Accordingly, that Congress chose a de novo standard of review in section 6015(e) supports our conclusion that evidence unknown to a participant in the innocent spouse administrative proceeding should be admissible if that participant (now a party in our Court) offers it in the proceedings before us.

Finally, section 6015(e)(7)(B) applies in a context different from that of FRCP 60(b)(2). Most notably, parties to a motion for relief from a judgment or order under FRCP 60(b)(2) have had a prior opportunity to conduct discovery, introduce evidence at trial, and prosecute their case before a court. In this situation, a reasonable diligence requirement makes perfect sense, because the parties have already had their chance to persuade the court. But in the context of section 6015(e)(7), the Court considers a case for the first time following a relatively limited administrative proceeding. *See, e.g.*, *Wilson v. Commissioner*, 705 F.3d at 990 (noting that, in an innocent spouse administrative proceeding, "[t]here is no formal administrative procedure . . . at which the taxpayer may present her case before an administrative law judge" and "[a]t no time during the process is the taxpayer afforded the right to conduct discovery, present live testimony under oath, subpoena witnesses for trial, or conduct cross-examination"). The more permissive rule in section 6015(e)(7) is appropriate in these circumstances.[7]

Our holding here is generally consistent with the amici's view that "exceptions to the administrative record rule of § 6015(e)(7) [should] be applied expansively given the *de novo* review the court must conduct, the requesting spouse's specific circumstances, and the nature of the IRS's administrative procedures." Amicus Br. 2. And as we have already observed, *see* note 5 above, the rule we adopt today would apply

---

[7] As the Commissioner notes, adopting Ms. Thomas's interpretation of section 6015(e)(7) would effectively preclude him from offering evidence in our Court that was discoverable (but not actually discovered) during a prior innocent spouse administrative proceeding. Reviewers in the IRS's innocent spouse program might therefore need to gather evidence beyond that required to actually dispose of a request, in case the additional evidence is needed in a future hypothetical judicial proceeding. Such a regime would undermine the efficient administration of innocent spouse claims.

similarly to evidence that is newly discovered by the requesting spouse or the Commissioner. To the extent the amici raise additional points that go beyond the facts of this case, we need not address them here, and we leave their resolution for another day.

IV.    *Conclusion*

In short, the blog posts in pages 1–74 and 97–131 of Exhibit 13–R are admissible because they constitute "newly discovered . . . evidence" within the meaning of section 6015(e)(7)(B). We will therefore deny Ms. Thomas's Motion to Strike.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

KERRIGAN, FOLEY, GALE, PARIS, MORRISON, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, and WEILER, *JJ.*, agree with this opinion of the Court.

BUCH, *J.*, concurring: I join, without reservation, the opinion of the Court. I write separately merely to note that, although our holding is faithful to the words of the statute Congress enacted, those words may not have captured what Congress intended. I will explain this through two nearly identical examples involving hypothetical taxpayers, Adams and Baker.

*Ms. Adams*

Ms. Adams claims to have suffered abuse during her marriage. On the rare occasion when she mustered the courage to ask her husband about the family's financial affairs, he would abuse her verbally or physically.

Ms. Adams actively participated in social media. She often posted pictures of her family's cheery and happy occasions. She posted pictures of herself and her husband on vacation. On Father's Day, she wrote a tribute to her husband, the father of her children.

After Ms. Adams and her husband divorced, the Commissioner discovered that the couple had underreported their income. Ms. Adams requested innocent spouse relief and alleged, among other things, that she was abused. During the administrative proceedings, neither Ms. Adams nor the Commissioner presented the social media posts. Ultimately, the Commissioner issued a final determination denying relief.

Ms. Adams files a petition in our Court challenging the Commissioner's denial of relief. At trial, the Commissioner seeks to introduce Ms. Adams's social media posts.

*Ms. Baker*

Ms. Baker claims to have suffered abuse during her marriage. On the rare occasion when she mustered the courage to ask her husband about the family's financial affairs, he would abuse her verbally or physically.

Ms. Baker actively participated in social media. She participated in an online forum for abused spouses. She posted pictures of bruises and wrote of the abuse she suffered.

After Ms. Baker and her husband divorced, the Commissioner discovered that the couple had underreported their income. Ms. Baker

requested innocent spouse relief and alleged, among other things, that she was abused. During the administrative proceedings, neither Ms. Baker nor the Commissioner presented the social media posts. Ultimately, the Commissioner issued a final determination denying relief.

Ms. Baker files a petition in our Court challenging the Commissioner's denial of relief. At trial, Ms. Baker seeks to introduce her own social media posts.

*Applying Our Holding to Ms. Adams and to Ms. Baker*

These two examples highlight how the admission of newly discovered or previously unavailable evidence may be a one-way street benefiting the Commissioner. The Adams example is similar to this case, and the opinion of the Court rightly concludes that the Commissioner may introduce the social media posts. The Commissioner did not create the social media posts, and he was under no obligation during the administrative proceedings to find them. If he finds them after the administrative proceedings conclude, they fit within the definition of newly discovered evidence.

Compare this with Ms. Baker's situation. Her social media posts would provide evidence of abuse. But because she created the social media posts, it may be difficult for her to establish that this potential evidence is newly discovered or previously unavailable to her. As a result, she may be precluded by section 6015(e)(7) from introducing this evidence.

This issue is not limited to social media posts. There is a vast array of evidence that could potentially be helpful to a putative innocent spouse yet might be excluded because it was neither newly discovered by nor previously unavailable to that putative innocent spouse. Examples might include medical records or police reports of abuse. Likewise, this could include financial records showing a putative innocent spouse's dire financial situation. In each instance, evidence that is helpful to and offered by the putative innocent spouse at trial might be barred by section 6015(e)(7) because it was not presented in the administrative proceedings.[1]

---

[1] I phrase these examples in terms of what "may" or "might" result. A putative innocent spouse may be able to establish that the documents suggested in these

*Unintended Consequences*

It is not clear that Congress intended to create the possibility of this result. Section 6015(e)(7) was added by the Taxpayer First Act as part of Title I, which bears the heading "Putting Taxpayers First." Taxpayer First Act, Pub. L. No. 116-25, § 1203, 133 Stat. 981, 988 (2019).[2] This provision was meant to resolve conflicting decisions amongst courts in innocent spouse cases, with some courts holding that an abuse of discretion standard applied while other courts held that the more taxpayer favorable de novo standard of review applied. Staff of J. Comm. on Tax'n, 116th Cong., General Explanation of Tax Legislation Enacted in the 116th Congress, JCS-1-22, at 11–13 (J. Comm. Print 2022). With the addition of section 6015(e)(7), Congress expressly adopted the more taxpayer favorable de novo standard of review. But it limited the scope of the review to the administrative record, except for newly discovered or previously unavailable evidence. In doing so, Congress may have greatly reduced the putative innocent spouse's ability to bolster his or her case as part of that de novo review. *See* Steve Milgrom, *Innocent Spouse Relief and the Administrative Record*, Procedurally Taxing (July 9, 2019), https://procedurallytaxing.com/innocent-spouse-relief-and-the-administrative-record/. As a result, Congress may have made it harder for a putative innocent spouse to challenge determinations denying relief. This would seem to run contrary to the stated purpose of the Act, to put taxpayers first.

ASHFORD and COPELAND, *JJ.*, agree with this concurring opinion.

---

examples were not available at the time of the administrative proceeding. Any decision on these issues must be based on the facts presented to the Court.

[2] In their treatise, Justice Scalia and Bryan Garner state that the title of and headings within an act are permissible indicators of meaning, "[b]ut a title or heading should never be allowed to override the plain words of a text." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 222 (2012).